## Sheets v. Rockwell International Corp.
*[Cite as 7 AOA 447]*

*Case No. 89AP-372*
*Franklin County, (10th)*
*Decided September 25, 1990*

*Vincent DePascale,* for Appellants.

*John W. Zeiger and James M. Jones, Jones, Day, Reavis & Pogue; Marilyn P. Maledon,* for Appellees.

STRAUSBAUGH, J.,

This is an appeal by plaintiffs Carl E. Sheets ("Sheets") and Rae Donna Sheets from a grant of summary judgment in favor of defendants Rockwell International Corporation ("Rockwell") and Gary Richards. The judgment was entered on plaintiffs' claim for damages as a result of Sheets' dismissal of employment by defendant-employer Rockwell.

Sheets was originality hired by Rockwell in 1952. At various times during his employment with Rockwell, Sheets would be temporarily laid off but he would subsequently return to Rockwell when recalled.

In August 1979, Sheets had been recalled from a layoff and was initially assigned to a position as a project planner. Shortly thereafter, Sheets was promoted to a supervisory position. During this time, Rockwell was involved in a contract with the United States Air Force involving the B-1 bomber ("B-1-B"). Sheets' department participated directly in the B-1-B project.

During the mid-1980's, Rockwell began an investigation concerning alleged mischarging among Rockwell employees relating to overtime. More specifically, the investigation pertained to allegations that certain departmental managers and supervisors at Rockwell's Columbus facility had instructed department employees to charge overtime,to the B-1-B contract whether or not employees had in fact engaged in B-1-B work. Rockwell's investigation included a review of employee tame cards, payroll records, and interviews with sixty-three Rockwell employees.

On January 17, 1986, as a result of its investigation, Rockwell discharged dive managers and supervisors, including Sheets, for allegedly instructing mischarging. Rockwell also issued ten suspensions and three written reprimands to employees who were allegedly involved in the mischarging, but who were not identified as affirmatively instructing time falsification.

On January 16, 1987, plaintiffs commenced a civil action against defendants relating to Sheets' termination. On July 26, 1988, defendants filed a motion for summary judgment. By judgment dated February 8, 1989, the trial court granted summary judgment for defendants and a final judgment entry was fled by the trial court on February 28, 1989.

Plaintiffs now appeal and set forth the following six assignments of error for our review:

"I. The trial court erred as a matter of law in granting defendants' motion for summary judgment where defendants failed to sufficiently argue the three-part test of Civ. R. 56(C). " I I . The trial court erred where it granted summary judgment for an employer when (1) such judgment was improper; (2) an employee shows wrongful discharge; (3) an employee presented facts and circumstances showing terms of an implied a contract providing for duration of employment and dismissal for just cause only; and (4) the facts underlying the just cause claim were in dispute.

"III. The trial court erred where it granted appellees' motion for summary judgment on appellant's defamation claim.

"IV. The court erred by granting defendants' motion for summary judgment where the movant was not entitled to judgment as a matter of law on the infliction of serious emotional distress claims.

"V. The court erred where it summarily dismissed the age discrimination clam which is a valid cause of action under O.R.C. Section 4101.17.

"VI. The court erred where it summarily dismissed plaintiffs' punitive damage and attorney fee claims."

Summary judgment is a procedural device designated to terminate litigation and to avoid a formal trial where there is nothing to try. Summary judgment "*** must be awarded with caution, resolving doubts and construing evidence against the moving party, and granted only when it appears from the evidentiary material that reasonable minds can reach only an adverse conclusion as to the party opposing the motion. ***" *Norris v. Ohio Std. Oil Co.* (1982), 70 Ohio St. 2d 1, 2.

In determining whether summary judgment is proper, a tripartite demonstration has been adopted by the Supreme Court of Ohio:

"*** (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made ***." *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St. 2d 64, 66.

Further, "[t]he burden of showing that no genuine issue exists as to any material fact falls upon the moving party in requesting a summary judgment." *Id.*

Under his first assignment of error, Sheets asserts that the trial court erred in granting defendants' motion for summary judgment where defendants failed to specifically argue the three-part test of Civ. R. 56(C). Although alleging that defendants fabled to properly argue the requirements of Civ. R. 56(C), the thrust of Sheets' first assignment of error is that the trial court committed prejudicial error in granting summary judgment for defendants because genuine issues of material fact remain. Sheets contends that the trial court failed to recognize a number of issues regarding his claims for relief which are the subject of his second, third, fourth, fifth, and sixth assignments of error. Accordingly, we will consider Sheets' first assignment of error in conjunction with the subsequent assignments of error.

Under his second assignment of error, Sheets asserts that the trial court erred in granting summary judgment in favor of defendants on Sheets' claim for wrongful discharge. Sheets maintains that the first cause of action of his complaint alleges both a wrongful discharge claim and an age discrimination claim.[1] Sheets contends that his wrongful discharge claim is based upon three theories:

(1) breach of an implied contract limiting Rockwell's right to terminate;

(2) Sheets' reasonable reliance, to his detriment, upon Rockwell's representations, and

(3) Rockwell's breach of an implied covenant of good faith and fair dealing injected into the employment relationship.

An ordinary cause of act on for wrongful discharge in an employment-at-will situation is not recognized under Ohio law. *Karnes v. Doctors Hospital* (Oct. 27, 1988), Franklin App. No. 87AP-1028, unreported (1988 Opinions 3876, 3880). In, *Mers v. Dispatch Printing Co.* (1985), 19 Ohio St. 3d 100, the Supreme Court of Ohio, in paragraph one of the syllabus, held that;

"Unless otherwise agreed, either party to an oral employment-at-will employment agreement may terminate the employment relationship for any reason which is not contrary to law."

The court in *Mers*, however, recognized that "*** the 'facts and circumstances' surrounding an at-will agreement should be considered to ascertain if they indicate what took place, the parties' intent, and the existence of implied or express contractual provisions which may alter the terms for discharge. ***" *Mers, supra,* at 103. The court further noted that "*** [e]mployee handbooks, company policy, and oral representations have been recognized in some situations as comprising components or evidence of the employment contract. ***" *Id.* at 104.

Sheets argues that under the "facts and circumstances" surrounding the agreement between Sheets and Rockwell, an implied contract was created. The apparent basis for Sheets' contention is twofold:

(1) the fact that Rockwell had a retirement system, and

(2) the assumption by Sheets, who was close to retirement status, that he was considered a valued employee by Rockwell. Plaintiffs' argument is without merit.

In the present case, the evidence clearly indicates that Sheets' contractual relationship with Rockwell was terminable at-will. The record indicates that in August 1979 Sheets signed a "Report for Work Notice," which provided in relevant part:

*"4. Agreement Regarding Employment*

"It is agreed that the employment of the undersigned by Rockwell International Corporation is at the will of either party and may be terminated on notice to the other as prescribed by applicable Rockwell International Corporation procedures. Other arrangements, agreements, or understandings, if any, regarding the period of the undersigned's employment, except any letter agreement regarding relocation expenses, are hereby cancelled and superseded."

One court, in reviewing the identical provisions of a Rockwell agreement, reasoned that "*** [i]t is difficult to imagine how the plaintiffs and Rockwell could have stated any more clearly that their agreement was for a contract of employment terminable at will, and plaintiffs offered no evidence to indicate that they did not understand the terms of their express contract. ***" *Bernard v. Rockwell Intern. Corp.* (C.A.6, 1989), 869 F.2d 928, 931.

In *Mathews v. Rockwell Intern. Corp.* (S.D. Ohio 1988), No. C-2-87-194, unreported (memorandum and order), plaintiff was discharged by Rockwell based upon the same allegation involved n the instant case, *i.e.,* mischarging overtime on other Rockwell projects to the B-1-B contract. Plaintiff alleged a number of claims arising out of his discharge including breach of

an employment contract, promissory estoppel, intentional infliction of emotional distress, negligent infliction of emotional distress, breach of the covenant of good faith and fair dealing, and defamation.

In *Mathews, supra,* the plaintiff had signed a "Report for Work Notice" identical to the agreement at issue in the present case. Under his breach of contract clam, plaintiff advanced the argument that the language contained in the "Report for Work Notice" altered the terms for discharge, creating, in effect, an implied "just cause" contract. The district court, in granting defendant's motion for summary judgment, rejected plaintiff's argument that the at-will terms of the agreement had been abrogated. The court, in surveying recent post-Mers decisions in Ohio, stated that "[g]iven the reluctance of the Ohio courts to alter at-will relationships absent a manifest intent, even if the Court takes as true all of plaintiff's assertions, the Court agrees with the defendant that these claims are insufficient to abrogate the traditional at-will relationship. ***" *Id.* at 8. The court further held that "*** [i]n light of this holding it is unnecessary to consider whether defendant had 'just cause' in terminating plaintiff." *Id.*

In the present case, Sheets was an at-will employee of Rockwell and his contract was terminable at will for any reason which is not contrary to law. *Mers, supra,* at 103. In his deposition, Sheets stated that at the time he signed the agreement he had reviewed the document and that he did not have any difficulty or disagreement with the terms therein. Given the facts of this action, including the agreement signed by Sheets, the contention by Sheets that Rockwell's retirement plan created an implied contract simply does not support a finding that the parties intended to be bound to a contract other than one at-will.

Sheets further contends that representations or promises were made by Rockwell which would fall within the doctrine of promissory estoppel. Sheets' brief states that he "believes" at least two promises were made by Rockwell that formed an impled contract, that were subsequently breached, and that Sheets relied upon to his detriment:

(1) that if he worked in accordance with the desires of Rockwell for the requisite amount of time, he would receive full retirement, and

(2) that his employers would treat him in a fair and equitable manner.

Sheets cites *Mers, supra,* for the proposition that the doctrine of promissory estoppel is applicable to his action. In *Mers,* the court stated that promissory estoppel is applicable to at-will employment agreements if "*** the employer should have reasonably expected its representation to be relied upon by its employee and, if so, whether the expected action or forbearance actually resulted and was detrimental to the employee." *Mers, supra,* at 105.

In the instant case, Sheets' bare allegation that he believes at least two promises were made by Rockwell is supported nether by the pleadings nor any other documents in the record; nor has Sheets provided factual support for his contention that he detrimentally relied upon any alleged promises by Rockwell. Such unsupported allegations and "*** general statements *** are insufficient as a matter of law to induce the necessary action or forbearance to support a promissory estoppel claim. ***" *Pyle v. Ledex, Inc.* (1988), 49 Ohio App. 3d 139, 146.

Sheets has also contended that Rockwell has breached a covenant of good faith and fair dealing with plaintiff. This argument is without merit. One Ohio appellate court has recently noted that:

"*** [T]he Ohio Supreme Court has refused to recognize a cause of action based upon a covenant of good faith and far dealing, but has instead held that at-will employment relationships may be terminated for any cause and at any tame 'even if done in gross or reckless disregard of an employee's rights.' *Phung v. Waste Management, Inc.* (1986), 23 Ohio St d 100, 102 ***." *Pyle, supra,* at 146.

Accordingly, we find that there are no genuine issues of material fact concerning Sheets' claim for wrongful discharge. The second assignment of error is hereby overruled.

Under his third assignment of error, Sheets asserts that the trial court erred in granting defendants' motion for summary judgment on Sheets' defamation claim.

A plaintiff, in order to make out a prima facie case for defamation, must establish "*** a publication to a third person for which defendant is responsible, the recipient's understanding of the defamatory meaning, and its actionable character ***." *Hahn v. Kotten* (1975), 43 Ohio St. 2d 237, 243. Plaintiff has failed to meet this burden.

Sheets' deposition testimony reveals the following:

"Q. *** Mr. Sheets, I'd like to know what evidence you have that Rockwell published--Rockwell, Mr. Richards or Mr. Aulthouse told anyone anything about you that you believe to be slanderous or defamatory.

"A. I don't know of anything.

"Q. You don't know of anything that they told anyone?

"A. No.

"Q. So you have no evidence whatsoever that Rockwell or any representative thereof or any of the named Defendants made any statements about you to anyone?

"A. They did the worst thing they could do. Instead of makIng the statement, they called me over and said you're done. Now, that to me--they don't have to talk. They tell you right there and you're gone.

"Q. So the only statement that they did make to you was to you, and that was merely that they were going to terminate you?

"A. Said this is your last day of work.

"Q. And that's the only thing on which your defamation claim rests; is that correct?

"A. Right." (Depo. at 72-73.)

Sheets' deposition testimony provides no evidence which would create a genuine issue for trial as to publication. Accordingly, the trial court did not err in granting summary judgment to defendants on Sheets' defamation claim.

Plaintiffs' third assignment of error is not well-taken.

Under his fourth assignment of error, Sheets asserts that the trial court erred In granting summary judgment in favor of defendants on Sheets' claims for serious emotional distress. Sheets' second cause under his complaint alleges that defendants' conduct either intentionally or negligently caused Sheets to suffer serious emotional distress.

In *Schultz v. Barberton Glass Co.* (1983), 4 Ohio St. 3d 131, the Supreme Court of Ohio first recognized a cause of action for the negligent infliction of serious emotional distress without a contemporaneous injury. In *Paugh v. Hanks* (1983), 6 Ohio St. 3d 72, recovery for this cause of action was permitted where a bystander to an accident sustained serious and foreseeable emotional injuries.

In *Mathews, supra,* at 11, the court noted that:

"*** [I]n *Oldfather v. Ohio Dept. of Transp.* 653 F. Supp. 1167 (S.D. Ohio 1986), *appeal dismissed,* 861 F. 2d 681 (1987), this Court distinguished plaintiff's claim arising out of an employment termination from those Ohio cases which have awarded recovery for negligent infliction of emotional distress to plaintiffs who were bystanders to accidents and sustained emotional injuries due to shock from observing the accident, and found that there was no cause of action for negligent infliction of emotional distress in an employment context."

More recently, in *Antalis v. Dept. of Commerce* (July 17, 1990), Franklin App. No. 89AP-548, unreported (1990 Opinions 3016, 3021), this court stated that:

"While appellant argues that public policy requires the court to recognize a claim for negligent infliction of emotional distress in the workplace as part of an employer's duty to provide a safe working environment, absent a clear expression of intent from the Ohio Supreme Court, we decline to expand the application of this tort to include actions arising out of an employment situation. ***" See, also, *Tohline v. Central Trust Co., M.A.* (1988), 48 Ohio App. 3d 280, 284 (no cause of action for negligent infliction of emotional distress where act of discharge from employment was not a physical accident and no serious emotional injury to appellant or wife noted).

In *Yeager v. Local Union 20* (1983), 6 Ohio St. 3d 369, the Supreme Court of Ohio recognized an independent cause of action for intentional infliction of emotional distress, holding in the syllabus that "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another is subject to liability for such emotional distress ***." The court adopted the standard for intentional infliction of emotional distress from Restatement of the Law 2d, Torts (1965) 71, Section 46(1).

In defining the term "extreme and outrageous," the *Yeager* court borrowed from Comment *d* to Section 46 of the Restatement, which provides in pertinent part:

"*** It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct

has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "outrageous!" ' " *Yeager, supra,* at 374-375.

The court in *Yeager* made clear that "*** in order to state a claim alleging the intentional infliction of emotional distress, the emotional distress alleged must be serious. ***" *Id.* at 374. In *Paugh, supra,* at 72, the court defined the term "serious emotional distress" as "*** emotional injury which is both severe and debilitating. Thus, serious emotional distress may be found where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case."

In the present case, Sheets, in his deposition testimony, stated that the sole basis for his claim of negligent or intentional infliction of emotional distress was the act of being discharged by Rockwell. Even assuming that Sheets could point to conduct on the part of Rockwell which could be characterized as "extreme and outrageous," Sheets has failed to allege emotional distress of a serious nature sufficient to state a cause of action.

Sheets' deposition testimony indicates nothing more than the fact that he was "plenty upset" at being discharged. However, Sheets never spoke to a physician, psychiatrist, or social worker concerning any emotional problems nor was he ever diagnosed with having any emotional difficulties due to his discharge. To the contrary, Sheets stated that "I don't think it [the discharge] affected my health in any way at all."

The trial court properly granted defendants' summary judgment on Sheets' claims for emotional distress. Plaintiffs' fourth assignment of error is overruled.

Under his fifth assignment of error, Sheets asserts that the trial court erred in summarily dismissing Sheets' claim of age discrimination. Sheets contends that his discharge by Rockwell was In violation of R.C. 4101.17.[2] Sheets argues that a factual dispute exists concerning the reason for his job termination.

In *Barker v. Scovill, Inc.* (1983), 6 Ohio St. 3d 146, the Supreme Court of Ohio construed the meaning of R.C. 4101.17. In order to prevail on a claim under R.C. 4101.17, a plaintiff must first establish a prima facie case of age discrimination, demonstrating:

"*** (1) that he was a member of the statutorily protected class, (2) that he was discharged, (3) that he was qualified for the position, and (4) that he was replaced by, or that his discharge permitted the retention of, a person not belonging to the protected class. ***" *Id.*, paragraph one of the syllabus.

If a plaintiff-employee establishes a prima facie case, the burden then shifts to the defendant-employer to articulate "*** a legitimate, nondiscriminatory reason for plaintiff's discharge. ***" *Id.* If the defendant-employer meets this burden, then the plaintiff assumes the burden of establishing "*** that the rationale set forth by defendant was only a pretext for unlawful discrimination. ***" *Id.* A plaintiff may establish that the legitimate, nondiscriminatory reason for the employment decision propounded by the defendant-employer is pretextual in one of two ways:

"*** The first is to establish by a preponderance of the evidence that the discriminatory reason was the true reason motivating the employer's conduct. Alternatively, the plaintiff can prove pretext by showing that the proffered legitimate reason was false. ***" *Sims v. Cleveland* (C.A.6, 1987), 813 F. 2d 790, 792.

See, also, *Texas Dept. of Community Affairs v. Burdine* (1981), 450 U.S. 248, 256.

In the instant case, both Sheets and Rockwell submitted opposing affidavits and statements concerning the allegations that Sheets ordered employees to mischarge overtime to the B-1-B contract. Rockwell submitted the affidavit of Arthur J. Norman, a former Director of Human Resources with Rockwell. Norman's affidavit relates that as a result of a Rockwell investigation, it was discovered that a small circle of departmental supervisors and managers, including Sheets, had instructed their employees to charge overtime to the B-1-B contract, whether or not the employee actually performed B-1-B work. Norman's affidavit further states that "[d]uring interviews with representatives of Rockwell's industrial security, two employees in Mr. Sheets' department executed written statements directly identifying Mr. Sheets as an individual who instructed them to mischarge their time. ***"

Rockwell further submitted what is designated as a "voluntary statement," attributed to Robert E. Smith. The document indicates that Smith gave the statement to a Rockwell industrial security manager. In the document, Smith states that Sheets, who was then a supervisor or manager at Rockwell, "*** gave me instructions to the effect that, 'We're behind on non-current spares and we've got to catch up. There is no overtime authorized so charge overtime on non-current spares to the B1-B.'" A similar statement by Hugh E. Black was submitted by Rockwell.

Rockwell also submitted a statement given by Sheets to industrial security in which Sheets stated in part:

"*** Although I have been told that several of the people working under me had received instructions from me to work Non-Current Spares overtime and charge to the B1-B program, I can honestly say I do not recall ever giving instructions such as this. With the constant pressure applied during the period I was a supervisor of D824 going to meetings several times a day, trying to supervise 36 people, in addition to being queried by Mr. Aulthouse, Director, and Mr. Richards, Manager, daily about status of our work, it is possible that I could have given this direction without thought, but I do not specifically recall having done so."

In his memorandum contra defendants' motion for summary judgment, Sheets submitted a number of affidavits pertaining to the mischarging allegations. The affidavit of James Underwood relates that he worked for Sheets for several years at Rockwell and that during that time Sheets never told him to mischarge nor was he aware of anyone else being told by Sheets to mischarge. A similar affidavit was signed by Clarence Loop, a former Rockwell employee who worked under Sheets.

The affidavit of Robert Stewart states that he was a former employee of Rockwell who worked under Sheets. Stewart further relates that he was involved with "non-current spares" and that he, worked with Robert Smith and Hugh Black. Stewart states that he was aware of the mischarging allegation, that he gave statements to security but was never given a copy and that "[s]ecurity attempted to put words in his mouth but he refused to approve any wording except his own." Stewart denies that Sheets ever told him or anyone else to mischarge.

An affidavit was also signed by Robert E. Smith, in which Smith states that security had questioned him concerning mischarging on time cards and that "he was rushed, and pressured as to wording, syntax, and the meaning of his answers." Smith's affidavit states that he has read the statement provided by Rockwell prior to signing his affidavit and that he now makes the following statements concerning the Rockwell document:

"a.) He does not remember stating that Carl Sheets told him to mischarge time.

"b.) Carl Sheets never told him to mischarge time.

"c.) The initials on page one do not appear to be his initials written by him.

"d.) He does not believe that page one of the statement he read is the same page one on the document he signed."

Smith further states that Sheets never told anyone to mischarge time and that he was "*** aware that in many cases Rockwell pressured people who were coming up on full retirement into early retirement where they would get substantially less money."

Sheets submitted his own affidavit in which he states that he instructed all of his subordinates to accurately and truthfully complete their time cards. Sheets further states that he has seen no time card, approved by him, which was false, fraudulent, or mischarged time. Sheets' affidavit contends that Rockwell possesses no time cards, completed by his subordinates and approved by him, which are false, fraudulent, or which mischarged time. Sheets also denies that he instructed Hugh Black, Robert E. Smith, or anyone else to mischarge time.

In evaluating the record upon an appeal from a summary judgment, we must examine the record and construe the evidence in the light most favorable to the party opposing the motion. See *Williams v. First United Church of Christ* (1974), 37 Ohio St. 2d 150. Based upon the facts and documents before this court, there are conflicts of evidence upon which reasonable minds might reach a different conclusion. Construing the evidence in the light most favorable to Sheets, a material issue of fact exists concerning the reason for Sheets' discharge. Accordingly, the trial court improperly granted summary judgment in favor of defendants on Sheets' claim for age discrimination.

Plaintiffs' fifth assignment of error is hereby sustained.

Under his sixth assignment of error, Sheets asserts that the trial court erred in summarily dismissing his claims for punitive damages and attorney's fees.

Sheets' contention that he is entitled to punitive damages relates both to his claim of wrongful discharge and his claim of age discrimination. To the extent that Sheets' sixth assignment of error concerns his claim for wrongful discharge, we have previously addressed his allegation of wrongful discharge under the second assignment of error, and thus his claim for damages is without merit.

Sheets' contention that punitive damages are recoverable under a R.C. 4101.17 claim is likewise without merit. In *South v. Toledo Edison Co.* (1986), 32 Ohio App. 3d 24, the court held that:

"***R.C. 4101.17(B) does not, either explicitly or implicitly, authorize the recovery of either compensatory or punitive damages. ***" *Id.* at 27.

More recently, in *Hoops v. United Tel. Co. of Ohio* (1990), 50 Ohio St. 3d 97, the Supreme Court of Ohio, in construing R.C. 4101.17, stated that:

"*** [I]t may be reasonably presumed that if the General Assembly had intended to confer the right to compensatory and punitive damages, it could have expressly so provided. However, when enacting and then amending R.C. 4101.17, the General Assembly declined *** to include the remedy of compensatory or punitive damages ***." *Id.* at 101.

Sheets correctly contends that R.C. 4101.17(B) allows for the award of attorney fees where a plaintiff is successful under R.C. 4101.17(A). Given our disposition of assignment of error number five, this court is reversing the trial court's judgment and remanding for further proceedings. While Sheets may eventually be entitled to attorney fees, assuming successful litigation of his age discrimination claim, it would be premature for this court to rule on this part of assignment of error number six.

Accordingly, to the extent provided above, Plaintiffs' sixth assignment of error is not well-taken.

In light of the foregoing, Plaintiffs' second, third, fourth, and sixth assignments of error are overruled. We sustain Plaintiffs' fifth assignment of error. Plaintiffs' first assignment of error is sustained only to the extent that we sustain the fifth assignment of error; otherwise, Plaintiffs' first assignment of error is overruled.

The judgment of the trial court is reversed and the cause remanded for further proceedings according to law.

*Judgment reversed and cause remanded.*

McCORMAC and YOUNG, J.J., concur.

———

[1] Sheets' first cause of action under his complaint states in pertinent part:

"15) Defendant Rockwell *** engaged in a course of action to prevent Plaintiff Carl Sheets from either working until age 70 or from reaching full retirement.

"16) Such actions were designed to prevent Plaintiff Carl Sheets from receiving the benefits he had already earned, the wages he should have earned, and discriminated against him by virtue of his age ***."

[2] R.C. 4101.17 provides in pertinent part:

"(A) No employer shall discriminate in any job opening against any applicant or discharge without just cause any employee between the ages of forty and seventy who is physically able to perform the duties and otherwise meets the established requirements of the job and laws pertaining to the relationship between employer and employee."