SIMONELLI, Appellant,

v.

ANDERSON CONCRETE CO., Appellee, et al.

[Cite as *Simonelli v. Anderson Concrete Co.* (1994), 99 Ohio App.3d 254.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 94APE01–123.

Decided Dec. 15, 1994.

*Larry R. Zingarelli,* for appellant.

*Arter & Hadden* and *Gary S. Batke,* for appellee Anderson Concrete Company.

DESHLER, Judge.

This is an appeal by plaintiff, Della S. Simonelli, from a summary judgment entered by the Franklin County Court of Common Pleas in favor of defendant, Anderson Concrete Company.

On December 31, 1992, plaintiff filed a complaint against defendant. Plaintiff subsequently filed an amended complaint on February 17, 1993. The amended complaint averred that plaintiff had been employed by defendant for seventeen years as a bookkeeper; that on September 25, 1992, co-workers of plaintiff instigated and provoked an incident with her; that without proper investigation or cause, a final disciplinary warning was issued to plaintiff for alleged misconduct; and that as a result of the disciplinary action, plaintiff contacted an attorney, who faxed a letter to defendant demanding that the written warning be removed from her file. Plaintiff's complaint alleged that defendant informed plaintiff, on October 22, 1992, that she was being fired "for getting an attorney involved in their dispute."

Plaintiff's amended complaint alleged causes of action for violation of public policy, infliction of emotional distress, breach of contract and promissory estoppel. Defendant filed an answer on February 24, 1993.

On October 7, 1993, defendant filed a motion for summary judgment. In support of its motion, defendant submitted the deposition testimony of plaintiff. Plaintiff filed a memorandum contra the motion for summary judgment on November 2, 1993.

By decision filed December 17, 1993, the trial court granted defendant's motion for summary judgment. The decision of the trial court was journalized by judgment entry filed January 6, 1994.

On appeal, plaintiff asserts four assignments of error for review:

"1. The court of common pleas committed reversible error by failing to recognize the appellant's claim of wrongful discharge in violation of public policy.

"2. The court of common pleas committed reversible error by concluding that the appellant failed to state a claim of intentional infliction of emotional distress.

"3. The court of common pleas committed reversible error by concluding that the appellant failed to state a claim of breach of contract.

"4. The court of common pleas committed reversible error by concluding that the appellant failed to state a claim of promissory estoppel."

██ Pursuant to Civ.R. 56(C), summary judgment shall be granted only if the evidence presented shows "that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Further, summary judgment shall not be rendered unless it appears from the evidence that "reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence * * * construed most strongly in his favor."

Under the first assignment of error, plaintiff contends that the trial court erred in failing to recognize her claim of wrongful discharge in violation of public policy. More specifically, the first count of plaintiff's amended complaint alleged that the public policy of Ohio provides that citizens have a right to consult an attorney and to have that attorney "contact a party with whom they have a dispute. By terminating plaintiff for consulting an attorney, defendant has violated Ohio public policy."

In response, defendant asserts that the trial court properly granted summary judgment as to plaintiff's public policy claim because plaintiff has failed to allege a violation of a specific statute. Defendant relies primarily upon the Ohio Supreme Court's decision in *Tulloh v. Goodyear Atomic Corp.* (1992), 62 Ohio St.3d 541, 546, 584 N.E.2d 729, 733, in which the court held that, "[a]bsent statutory authority, there is no common-law basis in tort for a wrongful discharge claim."

Subsequent to the judgment of the trial court and the filing of briefs and oral argument in the instant case, the Ohio Supreme Court, in *Painter v. Graley* (1994), 70 Ohio St.3d 377, 639 N.E.2d 51, overruled *Tulloh*. The second and third paragraphs of the syllabus in *Painter* provide:

"2. To state a claim of wrongful discharge in violation of public policy, a plaintiff must allege facts demonstrating that the employer's act of discharging him contravened a 'clear public policy.' (*Greeley v. Miami Valley Maintenance Contractors, Inc.* [1990], 49 Ohio St.3d 228, 551 N.E.2d 981, affirmed and followed.)

"3. 'Clear public policy' sufficient to justify an exception to the employment-at-will doctrine is not limited to public policy expressed by the General Assembly in the form of statutory enactments, but may also be discerned as a matter of law based on other sources, such as the Constitutions of Ohio and the United States, administrative rules and regulations, and the common law. (*Tulloh v. Goodyear Atomic Corp.* [1992], 62 Ohio St.3d 541, 584 N.E.2d 729, overruled.)"

The court in *Painter* further observed that "an exception to the traditional doctrine of employment-at-will should be recognized only where the public policy alleged to have been violated is of equally serious import as the violation of a statute." *Painter*, 70 Ohio St.3d at 384, 639 N.E.2d at 56.

In the present case, as previously noted, plaintiff contends that the reason she was discharged was because she obtained the services of an attorney. In her deposition testimony, plaintiff alleges that she was fired "[b]ecause I went to see an attorney. I was told that at the final day that I was there." (Depos.Plaintiff, 82.) According to plaintiff, a member of management told her that "in light of

the letter we received from your attorney, we're asking you to resign." (Depos. Plaintiff, 82.)

We note that defendant does not construe the facts in the same manner; rather, defendant essentially contends that plaintiff had been involved in prior disputes with her co-workers and that she had been warned to refrain from further disruptive behavior. Therefore, plaintiff's threat to sue her co-workers, through an attorney, was simply further indication to defendant that plaintiff was unwilling to cooperate, thereby leading to her discharge.

The facts in this case are disputed. On a motion for summary judgment, we are required to construe the facts most strongly in favor of the nonmoving party. Accordingly, assuming for purposes of summary judgment that plaintiff was fired for procuring the services of an attorney, the issue before this court is whether such action could constitute a violation of public policy.

We note that at least one federal court has held that an employer's discharge of an employee for consulting a lawyer constitutes a violation of public policy. *Thompto v. Coborn's Inc.* (N.D.Iowa 1994), 871 F.Supp. 1097. In *Thompto,* the court found a violation of public policy based upon a number of factors, including: legislative recognition of the power of the state judiciary to regulate the legal profession, including the power to admit persons to practice and to revoke a person's license to practice; the fact that lawyers, as guardians of the law,. play an important role in the preservation of society; the adoption by the Iowa Supreme Court of the Code of Professional Responsibility, which articulates the public policy that citizens of the state are entitled to access to professional legal services; the fact that attorneys are the key to obtaining relief from violations of individual and group rights in the employment context; and the fact that Congress has recognized the importance of consultation and employment of legal counsel to vindicate civil rights through federal statutory provisions awarding attorney fees for parties who are successful in vindicating those rights at trial. The *Thompto* court further held that "[e]ven if the authorities cited above in support of the public policy did not exist, the court concludes that a consultation with a lawyer is so fundamental to our system of justice that an employer's discharge of an employee for consulting a lawyer would violate public policy." *Id.* at 1121.

We find persuasive the *Thompto* court's reasoning, and we conclude that the act of firing an employee for consulting an attorney could serve as the basis for a public policy exception to the common-law employment-at-will doctrine. We make no determination regarding the merits of plaintiff's claim; rather, genuine issues of fact remain concerning whether plaintiff was actually discharged for consulting with an attorney. Accordingly, summary judgment was improper on plaintiff's claim for violation of public policy.

For the foregoing reasons, plaintiff's first assignment of error is sustained.

Under the second assignment of error, plaintiff contends that the trial court erred in concluding that plaintiff failed to state a claim for intentional infliction of emotional distress. Specifically, plaintiff asserts that the conduct of her co-workers, regarding an incident at work on September 25, 1992, and the subsequent circumstances surrounding her termination, constituted extreme and outrageous conduct.

In *Sheets v. Rockwell Internatl. Corp.* (1990), 68 Ohio App.3d 345, 588 N.E.2d 271, this court noted the requirements for a claim of intentional infliction of emotional distress as pronounced by the Ohio Supreme Court in its decision in *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 6 OBR 421, 453 N.E.2d 666:

"In *Yeager* * * * the Supreme Court of Ohio recognized an independent cause of action for intentional infliction of emotional distress, holding in the syllabus that '[o]ne who by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another is subject to liability for such emotional distress * * *.' The court adopted the standard for intentional infliction of emotional distress from Restatement of the Law 2d, Torts (1965) 71, Section 46(1).

"In defining the term 'extreme and outrageous,' the *Yeager* court borrowed from Comment *d* to Section 46 of the Restatement:

" ' " * * * It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'outrageous!' " ' *Yeager, supra,* at 374–375, 6 OBR at 426, 453 N.E.2d at 671.

"The court in *Yeager* made clear that ' * * * in order to state a claim alleging intentional infliction of emotional distress, the emotional distress alleged must be serious. * * *' *Id.* at 374, 6 OBR at 425, 453 N.E.2d at 671. In *Paugh* [*v. Hanks* (1983), 6 Ohio St.3d 72, 6 OBR 114, 451 N.E.2d 759], * * * the court defined the term 'serious emotional distress' as ' * * * emotional injury which is both severe and debilitating. Thus, serious emotional distress may be found where a reasonable person, normally constituted, would be unable to cope

adequately with the mental distress engendered by the circumstances of the case.'" . *Sheets, supra,* 68 Ohio App.3d at 354–355, 588 N.E.2d at 277.

In support of her claim for intentional infliction of emotional distress, plaintiff points to the incident at work on September 25, 1992, involving plaintiff and two co-workers. Construing the evidence most strongly in favor of plaintiff, the facts, as related in plaintiff's deposition testimony, indicate that plaintiff was at work at her desk around 11:00 a.m. that day when a co-worker, Michelle Crawford, asked her if she wanted to go to lunch. Plaintiff told Crawford that she was too busy, but that she would have another worker, Tom Hood, go out to pick up lunch for the other workers in the department. Crawford then went to ask another employee, Nita Hughes, whether she wanted any food.

Plaintiff subsequently contacted other employees regarding a lunch order. At approximately 12:10 p.m., the lunches arrived. As plaintiff was sitting at her desk, Hughes walked in front of plaintiff's desk, tossed a boxed lunch on top of plaintiff's keyboard terminal, and said to plaintiff, "Here. Eat this." (Depos. Plaintiff, 121.) Within five minutes, Crawford walked by plaintiff's desk and tossed her lunch on the keyboard terminal and also said to plaintiff, "Here. Eat this." (Depos.Plaintiff, 121.) Plaintiff then took the lunches and "slung them" against the wall. The lunches bounced off the wall and opened, spilling onto the carpet.

█ In the instant case, the trial court, based upon a review of the record, concluded that the actions of the defendant were not so extreme and outrageous as to go beyond all bounds of decency. We find no error in the trial court's determination. While the actions of plaintiff's co-workers were improper and could have caused anger on the part of plaintiff, such conduct, even assuming it was unprovoked, does not rise to the level of extreme and outrageous behavior as defined under *Yeager.* Liability for intentional infliction of emotional distress "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Yeager, supra,* 6 Ohio St.3d at 375, 6 OBR at 426, 453 N.E.2d at 671. See, also, *Reamsnyder v. Jaskolski* (1984), 10 Ohio St.3d 150, 153, 10 OBR 485, 487–488, 462 N.E.2d 392, 394.

█ Plaintiff also contends that the manner in which she was fired by defendant amounted to outrageous conduct. This contention is not supported by the record. Plaintiff's deposition testimony indicates that the meeting at which she was terminated was cordial. Moreover, Comment *g* to Section 46 of the Restatement of the Law 2d, Torts (1965), at 76, states:

"The conduct, although it would otherwise be extreme and outrageous, may be privileged under the circumstances. The actor is never liable, for example, where he has done no more than to insist upon his legal rights in a permissible way,

even though he is well aware that such insistence is certain to cause emotional distress. * * * ” See, also, *Foster v. McDevitt* (1986), 31 Ohio App.3d 237, 239, 31 OBR 520, 522–523, 511 N.E.2d 403, 406 (because plaintiff's employment was at will, employer was entitled to terminate him regardless of whether employer knew or intended that the termination would add to plaintiff's emotional distress).

Plaintiff's second assignment of error is overruled.

We will address plaintiff's third and fourth assignments of error together. These assignments of error concern plaintiff's claims of breach of an implied contract and promissory estoppel.

■■ Under Ohio law, “either party to an oral employment-at-will agreement may terminate the employment relationship for any reason which is not contrary to law.” *Mers v. Dispatch Printing Co.* (1985), 19 Ohio St.3d 100, 19 OBR 261, 483 N.E.2d 150, paragraph one of the syllabus. Moreover, there exists “a strong presumption in favor of a contract terminable at will unless the terms of the contract or other circumstances clearly manifest the parties' intent to bind each other.” *Henkel v. Educational Research Council of Am.* (1976), 45 Ohio St.2d 249, 255, 74 O.O.2d 415, 418, 344 N.E.2d 118, 122.

In *Mers, supra*, the court recognized two exceptions to the employment-at-will doctrine. Concerning the first exception, implied contract, the *Mers* court held in paragraph two of the syllabus that:

“The facts and circumstances surrounding an oral employment-at-will agreement, including the character of the employment, custom, the course of dealing between the parties, company policy, or any other fact which may illuminate the question, can be considered by the trier of fact in order to determine the agreement's explicit and implicit terms concerning discharge.”

The second exception deals with the doctrine of promissory estoppel. The *Mers* court stated that:

“The doctrine of promissory estoppel is applicable and binding to oral at-will employment agreements. The test in such cases is whether the employer should have reasonably expected its representation to be relied upon by its employee and, if so, whether the expected action or forbearance actually resulted and was detrimental to the employee.” *Id.* at paragraph three of the syllabus.

In the present case, the trial court noted that the evidence clearly indicated that plaintiff's relationship with defendant was terminable at will; thus, the remaining issue was whether plaintiff's employment was transformed into a relationship for a definite term, either through the creation of an implied contract or under the doctrine of promissory estoppel. We initially note that the record supports the trial court's determination that, at the time plaintiff was hired, she

was an at-will employee, a fact acknowledged by plaintiff in her deposition testimony.

■ Plaintiff contends, however, that an implied contract was subsequently created based upon the following: (1) a written warning plaintiff received following the food-throwing incident and; (2) a statement made by plaintiff, at the time she received the final warning, indicating that she intended to continue working for defendant under the terms of the warning.

In the present case, plaintiff received a letter from defendant on October 13, 1992, designated as "FINAL WARNING," regarding the food incident on September 25, 1992. The letter states that plaintiff violated the employer's code of conduct by "acting in an unprofessional manner when you verbally abused fellow employees and threw food. You have also been accused of physical abuse of fellow employees." The letter further states that "any future violation of your company's Code of Conduct will result in your immediate dismissal from employment." Plaintiff construes the warning letter to be an assurance from defendant that continued good behavior on her part would ensure her employment with defendant. We disagree.

A similar issue was raised in *Pyle v. Ledex, Inc.* (1988), 49 Ohio App.3d 139, 551 N.E.2d 205. In *Pyle,* the court held:

"While it is true that an employee may be dismissed for violating a code of regulations, it does not necessarily follow that an employee's adherence to such rules will automatically preclude his or her dismissal for totally unrelated reasons. The employer's threat to discharge an employee for violating disciplinary rules cannot be construed as a promise of job security if the rules are observed. In other words, simply obeying the rules will not guarantee continued employment. * * *" *Id.* at 145, 551 N.E.2d at 211. See, also, *Boggs v. Avon Products, Inc.* (1990), 56 Ohio App.3d 67, 72, 564 N.E.2d 1128, 1132–1133 (employer's assurances that employee's job was secure as long as he improved attendance record and adhered to attendance guidelines did not create implied contract altering terms of an at-will employment relationship).

Similar to the above authority, we find unpersuasive plaintiff's contention that the warning letter, providing that any future violations will result in dismissal, manifested an intent by the parties to alter the at-will agreement and bind each other to a new contract terminable only for cause. While not dispositive, we also note that the evidence indicates that plaintiff refused to sign the warning letter which she now asserts was intended to create a binding contract between her and her employer. We find it difficult to reconcile plaintiff's claim that she and her employer mutually assented to be bound by a new contract which she refused to sign.

 Nor do we agree with plaintiff's contention that a statement to plaintiff by Dick Anderson, the vice president of defendant, following the food incident, created an implied contract. According to plaintiff's deposition testimony, she had a discussion regarding the incident with Anderson, at which time Anderson stated to plaintiff that he "hoped I worked there a lot more years." (Depos. Plaintiff, 95.) We find the statement to be general in nature and nonspecific about future duration. " 'Standing alone, praise with respect to job performance and discussion of future career development will not modify the employment-at-will relationship.' " *Helmick v. Cincinnati Word Processing, Inc.* (1989), 45 Ohio St.3d 131, 543 N.E.2d 1212, paragraph three of the syllabus. Based upon review of the record, the trial court did not err in granting summary judgment on plaintiff's implied contract claim.

We next consider plaintiff's promissory estoppel claim. In addressing plaintiff's claim for an implied contract, we have previously concluded that the warning letter did not create an implied promise which would alter the at-will status of plaintiff's employment. Plaintiff's promissory estoppel claim is based upon the same warning letter; plaintiff contends that the final warning letter constituted a specific promise of continued employment. We are unpersuaded.

 The warning letter at issue, providing that future misconduct will result in plaintiff's dismissal, does not constitute a specific promise of job security upon which plaintiff could reasonably rely. See, *e.g.*, *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph two of the syllabus ("A promise of future benefits or opportunities without a specific promise of continued employment does not support a promissory estoppel exception to the employment-at-will doctrine.").

 Moreover, plaintiff has failed to show that she relied upon the warning letter to her detriment. Plaintiff's deposition testimony indicates that she did not look for other work while an employee of defendant. Nor does the record show that she turned down any other job opportunities subsequent to receiving the warning letter. See *Hanly v. Riverside Methodist Hosp.* (1991), 78 Ohio App.3d 73, 80, 603 N.E.2d 1126, 1131 (bare assertion that employee gave up opportunities at other employment insufficient to invoke promissory estoppel where evidence shows employee neither looked for other employment following alleged representations nor turned down any offers of employment).

Based upon the foregoing, the trial court did not err in finding that there were no genuine issues of material fact regarding plaintiff's claims for implied contract or promissory estoppel. Plaintiff's third and fourth assignments of error are overruled.

Accordingly, plaintiff's first assignment of error is sustained, plaintiff's second, third and fourth assignments of error are overruled, the judgment of the trial court is affirmed in part and reversed in part, and this matter is remanded to the trial court for further proceedings in accordance with law and consistent with this opinion.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

WHITESIDE, P.J., and BOWMAN, J., concur.