OPINION
On September 10, 1999, David A. Jelinek re-filed a complaint in the Franklin County Court of Common Pleas against Abbott Laboratories, Ross Products Division ("Ross"), Joy A. Amundson, Thomas M. McNally, William H. Stadtlander, Karl V. Insani, Gregory A. Lindberg and James L. Sipes. Mr. Jelinek had been employed by Ross, an Illinois corporation. The individual defendants were current and/or past employees of Ross. Mr. Jelinek set forth claims for relief of promissory estoppel, age discrimination in violation of R.C. 4112.02(A) and 4112.99, retaliation in violation of R.C. 4112.02(I) and 4112.99, violation of public policy, and willful and malicious destruction of records for purposes of impeding or impairing the current claims ("spoliation of evidence claim").
Ross filed an answer, and the individual defendants filed a motion to dismiss for failure to state a claim. On May 9, 2000, the trial court rendered a decision dismissing the promissory estoppel claims against the individual defendants and striking the spoliation of evidence claim. The trial court affirmed the ruling on the spoliation of evidence claim upon reconsideration.
On July 31, 2000, the defendants filed a motion for summary judgment as to all claims. Mr. Jelinek filed a memorandum contra, and the defendants filed a reply. On January 23, 2001, the trial court rendered a decision granting summary judgment to the defendants on all remaining claims. A judgment entry was journalized on February 12, 2001.
Mr. Jelinek (hereinafter "appellant") has appealed to this court, assigning the following errors for our consideration:
THE TRIAL COURT ERRED IN GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF'S CLAIM OF AGE DISCRIMINATION.
THE TRIAL COURT ERRED IN GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF'S CLAIM OF PROMISSORY ESTOPPEL.
THE TRIAL COURT ERRED IN GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF'S CLAIM OF CONSTRUCTIVE DISCHARGE.
THE TRIAL COURT ERRED IN GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF'S CLAIMS OF RETALIATION AND WRONGFUL DISCHARGE — PUBLIC POLICY.
Applicable to all of the above assignments of error is the standard for summary judgment. Summary judgment is appropriate when, construing the evidence most strongly in favor of the nonmoving party, (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. Zivich v. Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367, 369-370, citing Horton v. Harwick Chem. Corp. (1995), 73 Ohio St.3d 679, paragraph three of the syllabus. Our review of the appropriateness of summary judgment is de novo. See Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35. As to each assignment of error, the main issue involves whether or not there were genuine issues of material fact. In determining this issue, this court may not weigh the evidence, and inferences and questions of credibility will be resolved in favor of appellant. Perez v. Scripps-Howard Broadcasting Co. (1988),35 Ohio St.3d 215, 218. See, also, Reeves v. Sanderson Plumbing Products, Inc. (2000), 530 U.S. 133, 150, 120 S.Ct. 2097, 2110.
By way of brief background, appellant had worked for Ross in various sales positions for over thirty years. In January 1997, appellant took a new position at Ross as a primary care district manager. Ross employed eight primary care district managers throughout the country. Appellant was based in Columbus, Ohio and was the oldest district manager. Ross's sales representatives reported to their respective district managers. In an effort to reduce costs, Ross determined that it would eliminate the district manager positions. Appellant was informed of the elimination of his position and was offered a transfer, with no change in his salary and benefits, to a position as a sales representative in a territory, which included Gary, Indiana, known as the "Lake County, Indiana" territory. In the alternative, appellant could have elected to separate from his employment at Ross and take "pay continuation leave," wherein appellant would have been paid his then current salary for approximately nine months (or until he secured other employment or retired). Upon accepting the pay continuation leave package, appellant would have waived his right to bring any discrimination suit against Ross.
Because he could not afford to leave Ross, appellant reluctantly accepted the Lake County, Indiana position. Appellant reported to this position on January 26, 1998. On February 11, 1998, appellant submitted a letter to Gregory A. Lindberg, Ross's Vice President of Medical-Nutritional Sales, notifying Ross that appellant considered himself constructively discharged effective March 1, 1998. Mr. Lindberg responded with a letter offering to explore current openings at Ross. Appellant phoned Mr. Lindberg to schedule an appointment to discuss continued employment at Ross. However, a meeting was cancelled because appellant wanted to have his attorney present. On March 13, 1998, appellant wrote Mr. Lindberg informing him that his resignation would be effective April 1, 1998. The present suit followed.
In his first assignment of error, appellant contends the trial court erred in granting summary judgment in favor of Ross and the individual defendants (hereinafter collectively referred to as "appellees") on his age discrimination claim. Appellant claims appellees discriminated against him in violation of R.C. 4112.02. R.C. 4112.02, in effect at the time of the alleged discriminatory act(s), stated:
It shall be an unlawful discriminatory practice:
For any employer, because of the *** age *** of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.
A plaintiff may establish a prima facie case of age discrimination indirectly by showing that he or she was a member of the statutorily-protected class, that he or she suffered an adverse employment action, that he or she was qualified for the position held, and that he or she was replaced by a person not belonging to the protected class or that comparable, non- protected persons were treated more favorably. See Byrnes v. LCI Communication Holdings Co. (1996),77 Ohio St.3d 125, 128; Myers v. Goodwill Industries of Akron, Inc. (1997), 122 Ohio App.3d 294, 302, citing McDonnell Douglas Corp. v. Green (1973), 411 U.S. 792, 93 S.Ct. 1817. The employer may overcome the presumption inherent in the prima facie case by producing evidence of a legitimate, nondiscriminatory reason for the adverse employment action. See Mauzy v. Kelly Services, Inc. (1996), 75 Ohio St.3d 578, 582.
The plaintiff is then permitted to show that the employer's reason was merely a pretext for unlawful discrimination. Id. This may be established by showing the employer's proffered explanation is unworthy of credence. Reeves, 530 U.S. at 143. The ultimate burden of persuasion remains at all times with the plaintiff. Id. The trier of fact may consider evidence establishing the prima facie case and inferences properly drawn therefrom. Id. The prima facie case, along with sufficient evidence to reject the employer's proffered explanation may permit a finding of liability. Id. at 148.
Appellant has asserted that he can also show direct evidence of age discrimination. However, because we conclude that appellant has shown evidence of age discrimination under the McDonnell Douglas test, we do not reach appellant's contentions as to direct evidence of age discrimination.
Appellant asserts he was discriminated against on the basis of age because he was demoted, was the only district manager required to relocate, and was constructively discharged. There is no dispute that appellant was a member of the statutorily-protected class (he was fifty-five years old at the time his position was eliminated), that he suffered an adverse employment action (his position as a district manager was eliminated) and that he was qualified for the position. The dispute centers around whether the fourth prong of the McDonnell Douglas test has been met.
We note first that appellant's former job duties as a district manager were subsequently performed by several persons, two of whom belonged to the protected class. However, appellant contends that he has set forth sufficient evidence that he was treated less favorably than a comparable, non-protected person. As indicated above, Ross eliminated all district manager positions. Ross attempted to reassign the eight district managers to positions within their previously held territories. Of the eight district managers employed by Ross, two had to relocate appellant and Steven Schlies, the former district manager for the Chicago district. Appellant contends that he was offered a demotion to be a sales representative, with less responsibility, in Gary, Indiana, a "collapsed" territory, while Mr. Schlies was offered a lateral transfer to a comparable managerial position in Memphis, Tennessee.
There was evidence that the Lake County territory, which included Gary, Indiana, had been "collapsed" in an effort to reduce costs. (Jelinek deposition at 48.) Appellant looked at, among other things, gross sales in the territory in order to ascertain whether the territory was viable. Id. at 57. Appellant testified that in 1997, the gross sales in the area were about one-half of Ross's average territory. Id. at 225. In addition, appellant testified that the territory would not be competitive in regard to bonuses and that this would affect his income. Id. at 167, 233. In his affidavit, appellant stated that one of Gary, Indiana's major hospitals had closed, which would have affected sales, and that Gary, Indiana had been rated the most dangerous city in the United States in 1996 and 1997 in terms of crime.
In light of all the above and for purposes of summary judgment, appellant has established all four prongs of the McDonnell Douglas test. We now turn to appellees' asserted reason for its actions with regard to appellant's employment. Ross eliminated all of the district manager positions as part of a larger business plan. According to Mr. Lindberg's April 27, 1999 affidavit, Ross attempted to place the former district managers in their respective regions in order to save on relocation expenses. However, Mr. Lindberg stated that appellant and Mr. Schlies were offered positions that required them to transfer, and the Lake County, Indiana territory was the only open sales territory in appellant's region. Mr. Schlies had been the district manager in the Chicago territory and was offered a position in Memphis, Tennessee.
Construing the evidence most strongly in favor of appellant, we determine that there are genuine issues as to whether appellees' actions with regard to appellant's transfer were discriminatory. Appellant put forth evidence that of the eight district managers, he had the most years of service and was the oldest. Ross stated that it attempted to keep the former district managers in their respective regions. However, Mr. Schlies, who was not in the protected class, was moved from the Chicago area to Memphis, Tennessee. The Lake County, Indiana territory was geographically closer to Mr. Schlies's former territory than Memphis. There is no explanation in the record as to why Mr. Schlies was offered the comparable position in Memphis and not appellant, who had more seniority. For purposes of summary judgment and drawing all reasonable inferences in favor of appellant, appellant has shown genuine issues of fact as to his claim against appellees for age discrimination.
Accordingly, appellant's first assignment of error is sustained.
In his second assignment of error, appellant contends the trial court erred in granting summary judgment in favor of Ross on the promissory estoppel claim. Appellant contends, in essence, that he was promised he would have the district manager position for five years and, thus, has set forth an exception to the employment-at-will doctrine. For the reasons that follow, we determine there is a genuine issue of material fact and, therefore, summary judgment in favor of Ross on appellant's promissory estoppel claim was inappropriate.
The elements of promissory estoppel are: (1) a clear, unambiguous promise; (2) reliance upon the promise by the person to whom the promise is made; (3) the reliance is reasonable and foreseeable; and (4) the person claiming reliance is injured as a result of reliance on the promise. Weiper v. W.A. Hill Assoc. (1995), 104 Ohio App.3d 250, 260. The doctrine of promissory estoppel is applicable to at-will employment relationships, and the test in such cases is whether the employer should have reasonably expected its representation to be relied upon by its employee and, if so, whether the expected action or forbearance actually resulted and was detrimental to the employee. Kelly v. Georgia-Pacific Corp. (1989), 46 Ohio St.3d 134, paragraph three of the syllabus. A promise of future benefits or opportunities without a specific promise of continued employment does not support a promissory estoppel exception to the employment-at-will doctrine. Wing v. Anchor Media, Ltd. of Texas (1991), 59 Ohio St.3d 108, paragraph two of the syllabus, limited on other grounds in Dresher v. Burt (1996), 75 Ohio St.3d 280.
Appellant contends that prior to getting the district manager position, he was asked to give a five-year commitment and that he gave such a commitment. In his deposition, appellant stated that he spoke with Thomas Mack, then regional sales manager, about the new district manager positions. (Jelinek deposition at 35-36.) Mr. Mack told appellant that he would run it by Mr. Insani, Mr. Mack's immediate supervisor. Id. at 36; Mack deposition at 7. Mr. Mack spoke with Mr. Insani, and Mr. Mack went back to appellant and asked for a five-year commitment, which appellant gave. (Jelinek affidavit.) In his deposition, appellant testified as follows:
Did you anticipate retiring with Ross at age 55?
 No. I gave a commitment to Ross that I would work five more years, and that was at age 56.
 And you say you gave a commitment to Ross. What was that?
 When the opportunity came up to take the district, Mr. Insani insisted that I not get it for a year and a half or two years to retire and asked for a commitment to give to Mr. Tom Mack, which I gave to Mr. Insani before they gave me the district.
***
 Q. Now, you mentioned this five-year commitment. That was your five-year commitment to the company?
And likewise their commitment to me.
***
And that was given when I accepted the district. I was told that Mr. Insani felt that I was taking it only to retire next year, and I made a five-year commitment and likewise got a five-year commitment to run the district.
And who told you that you would run the district for five years?
Tom Mack, by way of Carl Insani.
And what did Carl actually tell you?
Tom Mack said to me that Carl Insani said "We're not giving Jelinek the district to have him retire next year." I said, "Tom, I will stay for five years if I get the district." He apparently talked with Insani about it and gave me the district that afternoon.
Okay. But did Tom Mack or Carl Insani tell you that you were guaranteed a job for five years?
I don't remember.
Okay. Did you understand that — or were you ever told that there was a guarantee that you'd have this job for five years, that is, this district manager position?
That's what I accepted for five years, was this district manager's position in central Ohio ***.
The commitment they wanted from you, though, was that you were not going to retire for five years; isn't that fair?
That's correct.
They wanted to make sure that you were, you know, not going to take on a new position only to walk out the door in another year?
That's correct.
Okay. Because I assume at that point in time they are looking at this as being a long- term endeavor. At the time they gave you this position, they weren't looking to terminate it—
It wouldn't make sense to do that. [Jelinek deposition at 104, 133-135.]
In addition to the above testimony, appellant stated that he did not get the job until he promised to stay for five years. (Jelinek affidavit.) Appellant and Mr. Insani discussed this commitment at a meeting in January 1997 and from these discussions, appellant understood that he had a five-year commitment as a district manager. Id.
The above evidence raises a genuine issue of material fact on the issue of promissory estoppel. Ross asserts there was no specific promise of job security. However, construing the evidence most strongly in favor of appellant, a reasonable jury could conclude under the evidence set forth above that Ross should have reasonably expected its representation(s) would be relied upon by appellant in taking the district manager position. At the very least, appellant could have reasonably expected that he would have the position for more than a year, as Mr. Insani allegedly indicated that he did not want to give appellant the position only to have appellant retire "next year." Further, appellant testified that not only did he give a five-year commitment but that such was Ross's commitment to him as well.
All of the above evidence, construed most strongly in favor of appellant, raises a genuine issue of material fact as to appellant's promissory estoppel claim. Therefore, summary judgment in favor of Ross on this claim was inappropriate. Accordingly, appellant's second assignment of error is sustained.
In his third assignment of error, appellant contends he set forth sufficient evidence to withstand summary judgment on his constructive discharge claim. The test for determining whether an employee was constructively discharged is whether the employer's actions made working conditions so intolerable that a reasonable person under the circumstances would have felt compelled to resign. Mauzy, supra at paragraph four of the syllabus. In applying this test, courts seek to determine whether the cumulative effect of the employer's actions would make a reasonable person believe that termination was imminent. Id. at 589. No single factor is determinative, and a myriad of factors is considered, including reductions in sales territory and inquiries about retirement intentions. Id. In addition, a transfer accompanied by measurable compensation at a comparable level does not necessarily preclude a finding of constructive discharge. Id.
For essentially the same reasons as discussed above in regard to the transfer to the Lake County, Indiana territory, we conclude that appellant has set forth sufficient evidence to withstand summary judgment on the constructive discharge claim. As indicated above, there is evidence that the territory at issue had been "collapsed" prior to appellant being offered the transfer, that the gross sales in the area were about one-half of Ross's average territory, that one of Gary, Indiana's major hospitals had closed, which would have affected sales, that the territory would not be competitive in regard to bonuses, which would affect appellant's income, and that Gary, Indiana had been rated the most dangerous city in 1996 and 1997 in terms of crime.
Ross offered conflicting evidence on these issues; however, we must construe the evidence most strongly in favor of appellant. See Chapman v. Adia Services, Inc. (1997), 116 Ohio App.3d 534, 545-546 (summary judgment inappropriate where, among other things, there are discrepancies about whether an alleged comparable transfer would actually result in the same compensation). Accordingly, we find that there is evidence raising genuine issues of material fact as to whether appellant was constructively discharged.
In light of the foregoing, appellant's third assignment of error is sustained.
In his fourth assignment of error, appellant asserts summary judgment should not have been granted on his claim for retaliation and wrongful discharge in violation of public policy. Appellant contends he was retaliated against (in that he was offered the "sham" transfer to the Lake County, Indiana territory) because he wanted to have his legal counsel present at an October 1997 meeting about his employment at Ross. For the reasons that follow, we find that summary judgment was appropriate on appellant's claim for retaliation and wrongful discharge in violation of public policy.
By August 1997, appellant was aware that the district manager positions were being eliminated. (Jelinek deposition at 38-39, 131, 148-149, 152-153; Jelinek affidavit.) Appellant was scheduled to meet with his new regional manager in October 1997 to discuss this. Although appellant knew that the district manager positions were being eliminated, he did not know what Ross would offer him. (Jelinek deposition at 156.) Appellant showed up at the meeting with his legal counsel, but Mr. Lindberg refused to meet with appellant without Ross's legal counsel present. Soon thereafter, appellant received in writing the Lake County, Indiana offer.
In order to state a claim of wrongful discharge in violation of public policy, a plaintiff must allege facts demonstrating that the employer's act of discharging the plaintiff contravened a clear public policy. Painter v. Graley (1994), 70 Ohio St.3d 377, paragraph two of the syllabus. Clear public policy sufficient to justify an exception to the employment-at- will doctrine is not limited to public policy expressed by the General Assembly in the form of statutory enactments, but may also be discerned as a matter of law based on other sources, such as the Constitutions of Ohio and the United States, administrative rules and regulations, and the common law. Id. at paragraph three of the syllabus.
To prove a case of retaliation, a plaintiff must establish that: (1) he or she engaged in a protected activity; (2) he or she was subjected to an adverse employment action; and (3) a causal link exists between a protected activity and the adverse action. Peterson v. Buckeye Steel Casings (1999), 133 Ohio App.3d 715, 727. As to the protected activity element, this court has determined that the act of firing an employee for consulting an attorney could serve as the basis for a public policy exception to the common law employment-at-will doctrine. Simonelli v. Anderson Concrete Co. (1994), 99 Ohio App.3d 254, 259. However, even if appellant was engaging in a protected activity with regard to wanting his attorney at the October 1997 meeting, appellant cannot show the causal link element.
The only evidence is that Ross had made the decision to eliminate appellant's position and to offer him the Lake County, Indiana position prior to the October 1997 meeting. (Lindberg April 27, 1999 affidavit; Sipes affidavit.) This transfer offer remained available to appellant after the October 1997 meeting was cancelled. Hence, there is no evidence of a causal link between appellant engaging in a protected activity and the alleged adverse employment action. Therefore, appellant cannot show all the elements of a claim for retaliation/wrongful discharge in violation of public policy.
Accordingly, appellant's fourth assignment of error is overruled.
In summary, appellant's first, second and third assignments of error are sustained, and his fourth assignment of error is overruled. The judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and this cause is remanded to such court to conduct further proceedings consistent with this opinion.