OPINION
Plaintiffs-appellants, Fred and Greg Silverman, appeal from the March 27, 2000 judgment entry of the Franklin County Court of Common Pleas granting judgment in the amount of $56,060.92 in favor of Fred Silverman against defendant-appellee, American Income Life Insurance Company of Indianapolis, Inc. ("AIL"), on Fred Silverman's claims of fraud and breach of contract against AIL. By the same entry, in a companion case consolidated for trial, the trial court entered judgment in favor of AIL against Greg Silverman's claims of fraud and breach of contract against AIL. The judgment further directed verdicts in favor of (1) AIL on Fred Silverman's claims for conversion, breach of fiduciary duty, and punitive damages, (2) AIL on Greg Silverman's claim for unjust enrichment, and (3) defendant Bernard Rapoport on Fred Silverman's claims against him.
AIL, an insurance company that sells supplemental insurance policies, is headquartered in Waco, Texas, and is licensed in forty-nine states, the District of Columbia, Canada, and select markets overseas. AIL was created by Rapoport, who was chief executive officer of AIL until September 1999.
Fred Silverman became an agent for AIL in 1975, and in 1979, he became a "co-state general agent" in Ohio, responsible for Columbus, Dayton, and Cincinnati. A state general agent heads an agency with an exclusive territory consisting of part or all of a state, and is responsible for all expenses and personnel of the agency. In 1984, Fred Silverman became the sole state general agent for his territory and signed an agency contract with AIL. The contract specifically set forth Fred Silverman's territory, his obligations as a state general agent, and the commissions he was entitled to receive. The contract expressly stated that a state general agent is an independent contractor, not an employee of the company, and that either the company or the state general agent had the right to terminate the agreement without cause by providing thirty days written notice. Specifically, the termination provision states:
 The Company may terminate this contract immediately if it is breached by the State General Agent, or if the State General Agent violates any applicable law, insurance code, or regulation. Either party may terminate this contract without cause by giving 30 days notice. Notice of termination is effective if mailed to the last known address of the other party.
In early November 1997, AIL gave Fred Silverman notice that it was terminating his contract with AIL, advising him that Marc Morton was replacing him as state general agent in his territory. Subsequently, Fred Silverman and Rapoport met in Washington, D.C. to negotiate the sale of Silverman's insurance agency, including its equipment and business leads, to Morton. Silverman and Rapoport also agreed AIL would continue to pay Fred Silverman $4,000 per month in renewal commissions (the "Washington agreement"). Fred Silverman's contract with AIL terminated in December 1997.
On July 27, 1998, Fred Silverman filed this action against AIL, Rapoport, and Morton. As amended, it alleged numerous causes of action against defendants including: (1) breach of fiduciary duty, (2) fraud, (3) negligent representation, (4) intentional injury to rights in property, (5) misappropriation of business opportunity, (6) breach of contract, (7) promissory estoppel, (8) intentional infliction of emotional distress, and (9) wrongful discharge. All of the causes of action were premised on the allegation that Fred Silverman was forced out of his relationship with AIL and as a result was deprived of the livelihood he had developed over twenty years. The case was assigned to a judge of the Franklin County Court of Common Pleas ("original judge").
Greg Silverman, Fred Silverman's son, also was an agent for AIL and was assigned to his father's agency. After Fred Silverman's contractual relationship with AIL was terminated, Greg Silverman terminated his own contractual relationship with AIL. On December 15, 1998, Greg Silverman filed a complaint in the Franklin County Court of Common Pleas, alleging (1) fraud, (2) negligent misrepresentation, (3) intentional injury to rights in property, (4) misappropriation of business opportunity, (5) breach of contract, (6) promissory estoppel, (7) intentional infliction of serious emotional distress, (8) unjust enrichment, and (9) wrongful discharge. After finding similar issues of fact and law existed, the trial court consolidated Fred and Greg Silverman's cases on March 31, 1999.
In February 1999, AIL stopped making the $4,000 per month renewal commission payments to Fred Silverman negotiated as part of the Washington agreement. In June 1999, Fred Silverman amended his complaint to add claims of conversion and retaliation, alleging AIL stopped paying his renewal commissions in retaliation for Fred Silverman's filing suit against AIL. Fred Silverman sought, and was granted, preliminary injunctive relief requiring AIL to pay him the $4,000 per month renewal commissions, with the payments to be retroactive to the time AIL stopped the payments. AIL subsequently filed a counterclaim against Fred Silverman claiming he had breached the Washington agreement and was not entitled to payment of the $4,000 per month renewal commissions.
In September and December 1999, defendants moved for summary judgment on all of plaintiffs' claims. In a decision issued January 21, 2000, the original judge sustained in part and overruled in part defendants' motions. Specifically, the trial court sustained defendants' motions for summary judgment as to both plaintiffs' claims for (1) intentional injury to rights in property, (2) misappropriation of a business opportunity, (3) intentional infliction of emotional distress, and (4) wrongful discharge. The trial court overruled defendants' motions for summary judgment as to both plaintiffs' claims for (1) fraud, (2) negligent misrepresentation, (3) breach of contract, and (4) promissory estoppel. In addition, the trial court overruled defendants' motions for summary judgment as to Fred Silverman's claims for breach of fiduciary duty and conversion, and Greg Silverman's claim for unjust enrichment.
The original judge was presiding over this case on the morning of January 24, 2000, the scheduled trial date, when a discussion was held with the parties "in an effort to clarify and refine the issues" regarding several matters, including outstanding motions in limine, that "arose in response to the Court's recent decision and entry which sustained in part and overruled in part Defendants' respective motions for summary judgment." (Jan. 24, 2000 decision and entry, 2.) Specifically, defendants advised the original judge he had failed to rule on Fred Silverman's retaliation claim; defendants further requested clarification whether any claims remained against defendant Morton and whether the issue of punitive damages would be decided at trial. The original judge took the matters under advisement and stated that voir dire could proceed until his decision was issued. At the same discussion, pursuant to Civ.R. 41(A) plaintiffs voluntarily dismissed their claims against defendants for negligent misrepresentation and promissory estoppel as inconsistent with their fraud claims.
Between the conclusion of the morning proceedings and the beginning of the afternoon proceedings on January 24, 2000, and with the original judge's decision still pending on the outstanding matters, the case was transferred to a retired visiting judge who was to be the primary judge responsible for this case. Plaintiffs' counsel noted for the record the original judge had advised counsel "he had matters on Thursday and Friday, which would prevent him from continuing on with the trial of this case if it were to start before him" that day. (Tr. I, 14.) Plaintiffs objected to the reassignment of the case and requested a continuance of the start of jury voir dire. The visiting judge overruled plaintiffs' objection, and voir dire of the prospective jurors began before the visiting judge.
The original judge issued his pending decision on all outstanding matters sometime on the afternoon of January 24, 2000. His decision formally dismissed plaintiffs' claims for negligent misrepresentation and promissory estoppel in accordance with plaintiffs' voluntary dismissal pursuant to Civ.R. 41(A), and further dismissed Morton as a defendant in the case, concluding no viable claims remained against him. In addition, the decision dismissed Fred Silverman's claim for retaliation because the court concluded a cause of action for retaliation was not set forth in Fred Silverman's complaint and a distinct cause of action for retaliation did not exist. Rather, the decision explained, any evidence of retaliation could be addressed under plaintiffs' claim for punitive damages. With regard to defendants' motions in limine, the decision (1) sustained in part and overruled in part defendants' motions to exclude seven undisclosed witnesses, (2) overruled defendants' motion to exclude approximately one hundred exhibits which were provided to defendants ten days before trial, and (3) sustained defendants' motion to exclude evidence of the preliminary injunction hearing. After those rulings, the following claims remained for trial: both plaintiffs' claims for fraud and breach of contract, Fred Silverman's claims for breach of fiduciary duty and conversion, and Greg Silverman's unjust enrichment claim.
At the beginning of the proceedings before the visiting judge the next day, Greg Silverman moved to reinstate his claim of promissory estoppel against Morton that he voluntarily dismissed the previous day. (Tr. I, 25.) The visiting judge denied the motion. The jury voir dire was completed and trial began before the visiting judge on the remaining claims against AIL and Rapoport.
At the conclusion of plaintiffs' evidence, the visiting judge granted a directed verdict in favor of Rapoport on all claims against him, granted a directed verdict in favor of AIL on the claims of conversion and unjust enrichment, and refused to allow the issue of punitive damages to go to the jury. The only issues remaining for the jury were plaintiffs' claims against AIL for fraud and breach of contract. The jury (1) found in favor of Fred Silverman on those issues and awarded him damages of $56,060.92, and (2) found in favor of AIL on Greg Silverman's claims. Defendants' pending counterclaim against Fred Silverman ultimately was dismissed and the case finally concluded in February 2001.
Plaintiffs Fred and Greg Silverman appeal, assigning the following errors:
 I. THE TRIAL COURT ERRED TO THE SUBSTANTIAL PREJUDICE OF THE PLAINTIFFS IN DISMISSING ALL CLAIMS AGAINST DEFENDANT MORTON.
 II. THE TRIAL COURT [ORIGINAL JUDGE] ERRED TO THE SUBSTANTIAL PREJUDICE OF THE PLAINTIFFS IN GRANTING DEFENDANT MORTON'S SECOND, ORAL MOTION FOR SUMMARY JUDGMENT ON THE MORNING OF TRIAL, WITHOUT PROVIDING PLAINTIFFS ADEQUATE NOTICE OF THE SUBMISSION DATE FOR THE MOTION AND WITHOUT PROVIDING PLAINTIFFS A MEANINGFUL OPPORTUNITY TO BE HEARD.
 III. THE TRIAL COURT ERRED TO THE SUBSTANTIAL PREJUDICE OF PLAINTIFFS IN GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT MORTON BECAUSE SUBSTANTIAL DISPUTES OF MATERIAL FACT PRECLUDED ENTRY OF JUDGMENT WITHOUT TRIAL.
 IV. THE TRIAL COURT [VISITING JUDGE] ERRED TO THE SUBSTANTIAL PREJUDICE OF THE PLAINTIFFS IN DENYING PLAINTIFFS' MOTION TO AMEND TO REINSTATE THE CLAIMS FOR NEGLIGENT MISREPRESENTATION AND PROMISSORY ESTOPPEL AGAINST DEFENDANT MORTON.
 V. THE TRIAL COURT [ORIGINAL JUDGE] ERRED TO THE SUBSTANTIAL PREJUDICE OF PLAINTIFF FRED SILVERMAN BY DISMISSING HIS RETALIATION CLAIM UPON DEFENDANTS' ORAL MOTION, WITHOUT PROVIDING PLAINTIFFS ADEQUATE NOTICE OF THE SUBMISSION DATE FOR THE MOTION AND WITHOUT PROVIDING PLAINTIFFS A MEANINGFUL OPPORTUNITY TO BE HEARD.
 VI. THE TRIAL COURT [ORIGINAL JUDGE] ERRED TO THE SUBSTANTIAL PREJUDICE OF PLAINTIFF FRED SILVERMAN BY DISMISSING THE RETALIATION CLAIM BECAUSE THE RETALIATION CLAIMS STATES A CLAIM UPON WHICH RELIEF CAN BE GRANTED.
 VII. THE TRIAL COURT [VISITING JUDGE] ERRED TO THE SUBSTANTIAL PREJUDICE OF PLAINTIFFS BY DIRECTING A VERDICT IN FAVOR OF THE DEFENDANTS ON PLAINTIFFS' DEMAND FOR PUNITIVE DAMAGES.
 VIII. THE TRIAL COURT [VISITING JUDGE] ERRED TO THE SUBSTANTIAL PREJUDICE OF PLAINTIFF FRED SILVERMAN BY DIRECTING A VERDICT IN FAVOR OF THE DEFENDANT RAPOPORT AND DISMISSING ALL CLAIMS AGAINST HIM.
 IX. THE TRIAL COURT [VISITING JUDGE] ERRED TO THE SUBSTANTIAL PREJUDICE OF PLAINTIFF FRED SILVERMAN BY DIRECTING A VERDICT IN FAVOR OF THE DEFENDANTS ON THE CONVERSION CLAIM.
 X. THE TRIAL COURT [VISITING JUDGE] ERRED TO THE SUBSTANTIAL PREJUDICE OF PLAINTIFFS THROUGH HIS ERRATIC, INCONSISTENT, AND ERRONEOUS ERRORS REGARDING THE ADMISSIBILITY OF EVIDENCE.
 XI. THE TRIAL COURT [ORIGINAL JUDGE] ERRED TO THE SUBSTANTIAL PREJUDICE OF THE PLAINTIFFS BY TRANSFERRING THE CASE TO A VISITING JUDGE BECAUSE THE TRANSFER WAS IN VIOLATION OF OHIO LAW.
 XII. THE TRIAL COURT [ORIGINAL JUDGE] ERRED TO THE SUBSTANTIAL PREJUDICE OF THE PLAINTIFFS BY TRANSFERRING THE CASE TO [THE VISITING JUDGE] BECAUSE [THE VISITING JUDGE'S] APPOINTMENT AS A PERMANENT VISITING JUDGE VIOLATES THE OHIO CONSTITUTION'S SEPARATION OF POWERS DOCTRINE, AS EXPRESSED IN ARTICLE IV OF THE OHIO CONSTITUTION.
 XIII. THE TRIAL COURT [VISITING JUDGE] ERRED TO THE SUBSTANTIAL PREJUDICE OF THE PLAINTIFFS IN PRESIDING OVER THE TRIAL OF THIS MATTER AND IN ENTERING FINAL JUDGMENT IN THIS CASE BECAUSE [THE VISITING JUDGE] WAS WITHOUT AUTHORITY TO DO SO.
 XIV. THE TRIAL COURT ERRED TO THE SUBSTANTIAL PREJUDICE OF THE PLAINTIFFS BECAUSE THE PRE-TRIAL PROCEDURES, THE CONDUCT OF THE TRIAL, AND THE POST-TRIAL PROCEDURES, INCLUDING ENTRY OF JUDGMENT, DEPRIVED PLAINTIFFS OF A FAIR TRIAL AND OF DUE PROCESS OF LAW, IN VIOLATION OF SECTION 16, ARTICLE I OF THE OHIO CONSTITUTION.
Plaintiffs' first three assignments of error are interrelated and we address them jointly. Together they assert that after denying defendant Morton's motion for summary judgment on January 21, 2000, the original judge erred on January 24, 2000, when it granted defendant Morton's "second," or "renewed," oral motion for summary judgment on Fred Silverman's claims for breach of fiduciary duty and contract and on Greg Silverman's claim for fraud, resulting in the dismissal of Morton from the case. Plaintiffs contend they had no prior notice of the "second" motion for summary judgment, no opportunity to review the deposition testimony Morton relied on, and no meaningful opportunity to prepare a response. Plaintiffs argue the original judge should have first set a hearing date for the "second" motion to be heard and allowed plaintiffs sufficient time to respond before granting summary disposition for Morton.
Contrary to plaintiffs' assertion on appeal, Morton did not bring a "second," or "renewed," motion for summary judgment. Morton merely requested that the court clarify whether he remained a defendant in light of the January 21, 2000 decision on defendants' motions for summary judgment in which several of plaintiffs' claims were dismissed.
Our conclusion is buttressed by the original judge's decision and entry regarding the matters brought to his attention by defense counsel on January 24, 2000. According to the decision and entry, the discussion was held "in an effort to clarify and refine the issues presented" wherein "[s]everal distinct matters arose in response to the Court's recent decision and entry which sustained in part and overruled in part Defendants' respective motions for summary judgment." (Emphasis added.) (Jan. 24, 2000 decision and entry, 2.) Moreover, after noting plaintiffs no longer had negligent misrepresentation and promissory estoppel claims pending because plaintiffs had voluntarily dismissed them at the January 24, 2000 proceeding, the court observed "[t]he second area which the Court was informed of was a disagreement as to the current status of any and all claims against Defendant Marc Morton, in light of the Court's Decision and Entry dated January 21, 2000. Defendants aver that as a result of the Court's recent decision, Marc Morton should no longer be a defendant in this action because there are no remaining claims against him." (Emphasis added.) (Jan. 24, 2000 decision and entry, 3.) Accordingly, to the extent plaintiffs claim that the matter at issue was a second or renewed motion for summary judgment, rather than clarification of the ruling on defendants' previous motion, their contentions lack merit. The court therefore was not required pursuant to Civ.R. 56(C) to set a hearing date fourteen days prior to the time it considered the matter.
Similarly unpersuasive is plaintiffs' next contention that they had no opportunity prior to the January 24, 2000 proceeding to review and familiarize themselves with the deposition testimony Morton relied on, thereby depriving plaintiffs a meaningful opportunity to respond and to prepare. The depositions of Fred and Greg Silverman that Morton relied on and which the court reviewed in making its decision, had been filed by plaintiffs no later than January 4, 2000, the date their memorandum in opposition to defendants' motion for summary judgment was filed. Thus, the materials were not "new" or "additional," but were already before the court or in the possession of plaintiffs at the time of the January 24, 2000 proceeding. Although plaintiffs further assert material issues of fact existed which precluded summary judgment in favor of Morton, plaintiffs have failed to identify any facts in the pretrial record that demonstrated a genuine issue of material fact regarding their claims against Morton. Accordingly, plaintiffs' first three assignments of error are overruled.
In their fourth assignment of error, plaintiffs assert the visiting judge abused his discretion in denying their motion to reinstate their claims of negligent misrepresentation and promissory estoppel against Morton that they voluntarily dismissed the previous day. Plaintiffs argue that when the original judge dismissed their fraud and contract claims against Morton on January 24, 2000, plaintiffs should have been permitted to reinstate their negligent misrepresentation and promissory estoppel claims against Morton pursuant to Civ.R. 15(A) on January 25, 2000. Finally, plaintiffs assert defendants would not have been prejudiced because "all of this occurred the morning of trial," and "Morton was presumably present and prepared to go forward with his defense." (Plaintiffs' Brief, 18.)
Although plaintiffs contend both of them moved the court for leave to reinstate their claims of promissory estoppel and negligent misrepresentation against Morton after the original judge determined no viable claims remained against Morton, the record reveals that only Greg Silverman moved to reinstate a claim against Morton, his claim for promissory estoppel; Fred Silverman did not move to reinstate his claims against Morton. Moreover, all of these matters did not occur on the morning of trial. On the afternoon of January 24, 2000, the original judge issued a decision clarifying that his January 21, 2000 decision left no remaining claims against Morton, thereby eliminating him as a defendant. Greg Silverman did not present his request to the visiting judge to reinstate the subject claims until the next day, January 25, 2000, when, according to the visiting judge, Morton was not present.
We review the court's decision to deny a motion to amend a pleading for an abuse of discretion. State ex. rel. Askew v. Goldhart (1996),75 Ohio St.3d 608, 610. While the rule allows for liberal amendment, motions should be refused if undue prejudice would result to the opposing party. Turner v. Cent. Local School Dist. (1999), 85 Ohio St.3d 95, 99; Schweizer v. Riverside Methodist Hospitals (1996), 108 Ohio App.3d 539,545. For the following reasons, we conclude the visiting judge did not abuse his discretion in denying Greg Silverman's motion to reinstate his claim of promissory estoppel against Morton.
First, the claim had been voluntarily and unconditionally dismissed by Greg Silverman at the proceedings before the original judge on January 24, 2000. At the same proceeding, the continued viability of Morton as a defendant was questioned in light of the original judge's recent dismissal of plaintiffs' various claims. Greg Silverman could have conditioned the dismissal of his promissory estoppel claim against Morton on the continued existence of other claims against Morton.
Secondly, Morton should have been able to justifiably rely on the original judge's decision eliminating Morton as a defendant in this action, such that Morton would no longer have to appear and defend in this action. No substantial prejudice occurred to plaintiffs due to Morton's dismissal in this case because his dismissal from the action was not a dismissal on the merits. Plaintiffs were therefore not precluded from refiling an action against Morton and requiring him to defend against plaintiffs' claims at another time. Indeed, were we to reverse, Greg Silverman would be in the same posture before the trial court as he is under our disposition of his argument. Were the lack of prejudice the sole basis for finding his argument unpersuasive, our conclusion may have been different; however, in combination with the other reasons noted, the lack of prejudice is a valid consideration.
Third, in moving to reinstate his claim, Greg Silverman did not identify in the trial, and he has similarly failed to identify on appeal, the evidentiary support for his claim of promissory estoppel against Morton. The court therefore acted within its discretion in denying the motion to reinstate the claim. Wilmington Steel Prods., Inc. v. Cleveland Elec. Illuminating Co. (1991), 60 Ohio St.3d 120, syllabus (where a plaintiff fails to make a showing of support for matters sought to be pleaded, a trial court acts within its discretion in denying a motion to amend). Accordingly, plaintiffs' fourth assignment of error is overruled.
Plaintiffs' fifth and sixth assignments of error, which involve dismissal of Fred Silverman's claim for retaliation, will be discussed together. In his third amended and supplemental complaint, Fred Silverman alleged defendants retaliated against him by stopping payment of his renewal commissions after this lawsuit was filed. Plaintiffs now assert the original judge erred in (1) dismissing the retaliation claim on defendants' oral motion at the proceedings before him on January 24, 2000, without providing plaintiffs adequate notice of the motion and a meaningful opportunity to be heard in response to the motion, and (2) concluding Fred Silverman did not have a viable cause of action for retaliation.
In their first assertion, plaintiffs state, incorrectly, defendants had not moved to dismiss Fred Silverman's retaliation claim prior to the proceeding held before the original judge on January 24, 2000. They also contend they did not have adequate notice of the motion or a meaningful opportunity to respond to the "surprise" motion.
To the contrary, the record demonstrates defendants filed their motion for summary judgment on December 21, 1999, which included a request for summary judgment on the retaliation claim. On January 4, 2000, Fred Silverman filed his memorandum in opposition to defendants' motion for summary judgment, presenting arguments specifically addressing the viability of his retaliation claim. For whatever reason, the original judge failed to address the issue of retaliation in his January 21, 2000 decision on defendants' motion. Therefore, at the hearing before the original judge on January 24, 2000, defendants requested that the judge issue a ruling regarding their submitted request for summary judgment on the retaliation claim. Accordingly, the record does not support plaintiffs' contention that they did not have adequate notice or a meaningful opportunity to respond to defendants' motion for summary judgment on Fred Silverman's claim.
In their second assertion, plaintiffs contend the trial court erred in determining Fred Silverman did not present a viable claim of retaliation. Plaintiffs admit a cause of action for retaliation in the factual context of this case has not been recognized in this state, but plaintiffs assert such a cause of action is viable based on decisions by federal courts and courts in Ohio that have recognized tort claims based on a person's right to be free from retaliation for exercising a constitutional right. See, e.g., Johnson v. Avery (1969), 393 U.S. 483
(prison officials may not retaliate against prisoner for seeking access to the federal courts); Perry v. Sindermann (1972), 408 U.S. 593 (state college may not refuse to renew non-tenured professor's contract for exercising constitutionally protected right of free speech); Chapman v. ADIA Services, Inc. (1997), 116 Ohio App.3d 534 (employer's discharge of employee for consulting attorney violates public policy of Ohio and supports claim for wrongful discharge); Simonelli v. Anderson Concrete Co. (1994), 99 Ohio App.3d 254 (plaintiff has claim for wrongful discharge in violation of public policy in Ohio where plaintiff was discharged from employment for consulting an attorney). Plaintiffs assert that Fred Silverman alleged in his third amended complaint a viable constitutional claim of retaliation based on AIL's withholding his $4,000 monthly renewal commissions "in retaliation for Plaintiff's exercise of his rights to free access of the courts and trial by jury" in filing this lawsuit.
The cases plaintiffs rely on are distinguishable and thus do not support extending the tort of retaliation to the facts of this case. The federal cases plaintiffs rely on recognize a constitutional tort of retaliation where a person is deprived of a constitutionally or statutorily protected interest under color of state law. See, generally, I Dobbs, Law of Torts (2001), Section 44. In those cases, the defendant is generally a governmental actor, but may also be a private individual who uses state law to violate a protected right. Id. The federal constitution-based tort actions for retaliation do not apply here because Fred Silverman neither alleges that defendants are government actors, nor that they unlawfully used state law to deprive him of a protected right.
Ohio's recognized common law tort actions for retaliation do not support Fred Silverman's argument. Chapman and Simonelli are part of the line of cases that recognizes a cause of action in tort for wrongful discharge of an employee where the discharge, or other adverse employment action, is in violation of statute, constitution, or clear public policy. See Mers v. Dispatch Printing Co. (1985), 19 Ohio St.3d 100; Painter v. Graley (1994), 70 Ohio St.3d 377. Those cases are distinguishable from Fred Silverman's circumstances because he was an independent contractor, not an employee.
Fred Silverman was not left without a remedy for the allegedly improper withholding of his renewal commissions, as the trial court ordered defendants to pay him the commissions withheld and Fred Silverman was allowed to pursue his breach of contract claims against defendants. Given the foregoing, coupled with the general proposition that in Ohio, the Supreme Court or the General Assembly creates new causes of action, we decline Fred Silverman's invitation to establish such a new cause of action. Anderson v. St. Francis-St. George Hosp. (1992),83 Ohio App.3d 221, 227; see, generally, High v. Howard (1992),64 Ohio St.3d 82. Plaintiffs' fifth and sixth assignments of error are overruled.
In their seventh assignment of error, plaintiffs assert the visiting judge erred in directing a verdict in favor of defendants on plaintiffs' demand for punitive damages. Plaintiffs first contend that, contrary to Civ.R. 50(E), the court never placed on the record its reasons for granting a directed verdict. To the contrary, the parties' counsel extensively discussed whether plaintiffs demonstrated malice. The court expressly found as follows:
 * * * I think this business is run like a company store back in the 19th century. People have gotten into debt, are tied to the company, and then made to work their tails off. It's not a very pretty business organization, but I think with respect to the plaintiffs, they were happy to go along with making the money.
 They have a very close relationship with Mr. Rapoport. I think his business decision was certainly permissible, especially under the terms of the contract. It was a business decision to terminate and not a malicious one, necessarily, and I think to hold otherwise would extend punitive damages into the contract area to a very much unprecedented degree. It is not my position to do so. Some day the Supreme Court may decide to do that, but I think to follow the law I am forced to find there is no malice, no punitive damages, and I will so conclude.
All right. That is my holding. (Tr. VII, 1321.)
The following day the court affirmed its ruling in favor of defendants on the issue of punitive damages. (Tr. VIII, 1419.) Although plaintiffs now complain the trial court did not clearly articulate the reasons for its decision pursuant to Civ.R. 50(E), plaintiffs neither objected nor asked for further specificity in the court's ruling. Plaintiffs have accordingly waived their right to protest the adequacy of the court's ruling. Campbell v. Pritchard (1991), 73 Ohio App.3d 158, 164; Grange Mut. Cas. Co. v. Fleming (1982), 8 Ohio App.3d 164, 166.
Although plaintiffs do not dispute that punitive damages are not typically available for breach of contract claims, plaintiffs next contend they presented sufficient evidence of malice, oppression or insult to submit the question of punitive damages to the jury on plaintiffs' claims for fraud and conversion. See Preston v. Murty (1987),32 Ohio St.3d 334 (punitive damages may be awarded in tort actions which involve fraud, malice, or insult).
A motion for directed verdict should be granted when the trial court, construing the motion most strongly in favor of the nonmoving party, finds that on any determinative issue, reasonable minds could come to but one conclusion on the evidence submitted, and such conclusion is adverse to the nonmoving party. Civ.R. 50(A)(4); Mantua Mfg. Co. v. Commerce Exchange Bank (1996), 75 Ohio St.3d 1, 4. A directed verdict must be denied when substantial, competent evidence has been presented from which reasonable minds could draw different conclusions. Kroh v. Continental Gen. Tire, Inc. (2001), 92 Ohio St.3d 30, 31. Appellate review of a trial court's decision to grant a motion for a directed verdict is de novo. Abbott v. Jarrett Reclamation Serv., Inc. (1999), 132 Ohio App.3d 729,738.
Plaintiffs did not present substantial, competent evidence of fraud, malice, oppression, or insult to submit the issue of punitive damages to the jury for its consideration. Although plaintiffs proffer here their conclusion that sufficient evidence was presented at trial on the issue of punitive damages, plaintiffs fail to identify the specific evidence supporting their conclusion. The trial court did not err in granting a directed verdict on the issue of punitive damages, and plaintiffs' seventh assignment of error is overruled.
In their eighth assignment of error, plaintiffs assert the visiting judge erred by directing a verdict in favor of Rapoport. Specifically, plaintiffs contend the court erred in (1) determining Rapoport was acting not in his individual capacity but on behalf of AIL and (2) concluding an individual acting on behalf of an employer can never himself be liable for misconduct.
After reviewing the evidence and in granting a directed verdict in favor of Rapoport, the trial court concluded Rapoport "was speaking for the corporation and not for himself" regarding the claims asserted against him. (Tr. VII, 1358.) Plaintiffs argue it was for the jury to decide whether Rapoport was acting for himself or AIL because sufficient evidence was presented that Rapoport acted outside the scope of his employment with respect to the conversion claim to allow the question to go to the jury. See Osborne v. Lyles (1992), 63 Ohio St.3d 326, 330
("[W]hether an employee is acting within the scope of his employment is a question of fact to be decided by the jury"). Plaintiffs do not argue here that Rapoport breached a contract or was liable for fraud in an individual capacity.
In deciding plaintiffs' ninth assignment of error, infra, we conclude the trial court properly directed a verdict on the conversion claim. Because there was no conversion claim left for the jury to consider, Rapoport could not be held individually liable for the claim and was accordingly properly dismissed as a defendant in that claim.
In their second contention, plaintiffs argue the trial court erroneously concluded that an individual acting on behalf of an employer can never himself be liable for misconduct. In that regard, this court has held that "[w]hen a corporate officer commits a tort while in the performance of his duties, he is individually liable for the wrongful act." Cent. Benefits Mut. Ins. Co. v. RIS Admrs. Agency, Inc. (1994),93 Ohio App.3d 397, 403, citing Shaffer v. Frontrunner, Inc. (1990),57 Ohio App.3d 18, 22. Therefore, because Rapoport was the founder of AIL and, at the time of the alleged acts, was its chief executive officer and chairman, Rapoport could have been found to be individually liable for wrongful acts he committed. However, contrary to plaintiffs' assertion on appeal, the trial court did not conclude that an individual acting on behalf of an employer can never himself be liable for misconduct. Moreover, plaintiffs did not argue in the trial court that Rapoport was individually liable for wrongful acts committed "while in the performance of his duties." Rather, plaintiffs argued Rapoport was individually liable for acts committed outside the scope of his employment. Plaintiffs' eighth assignment of error is overruled.
In their ninth assignment of error, plaintiffs assert the visiting judge erred in directing a verdict in favor of defendants on Fred Silverman's conversion claim.
At trial, plaintiffs based Fred Silverman's claim for conversion on evidence that after Fred Silverman filed this lawsuit, AIL stopped Silverman's monthly renewal payments of $4,000 per month and did not resume payment of the monthly renewals until several months later when the original judge ordered AIL to do so. Plaintiffs did not argue in the trial court, and do not argue here, that Fred Silverman had not received all of the $4,000 monthly payments due him at the time of trial. Indeed, the visiting judge apparently directed a verdict on the conversion claim because Fred Silverman had received the subject of the conversion action, the renewal commissions, from AIL, and any miscellaneous or consequential damages resulting from AIL's failure to make the monthly renewal payments to Fred Silverman could be recovered under his claim for breach of contract. Plaintiffs assert on appeal that the "cuffoff," itself, of the payments due Fred Silverman constituted conversion, regardless whether Fred Silverman ultimately received all renewal commissions owed to him.
Fred Silverman's right to receive $4,000 per month in renewal commissions, identified in the document memorializing the Washington agreement, arguably was a "property" interest subject to conversion. Zacchini v. Scripps-Howard Broadcasting Co. (1976), 47 Ohio St.2d 224,227, reversed on other grounds (1977), 433 U.S. 562 (intangible rights merged in or identified with a document, such as collected insurance premiums, are subject to conversion); Cent. Benefits Mut. Ins. Co., supra, (control by one party of health insurance premiums which is adverse to another party who has a beneficial interest in the premium funds can constitute conversion). Conversion is any wrongful exercise of dominion or control over property to the exclusion of the rights of the owner, or withholding it from his or her possession under a claim inconsistent with his or her rights. Zacchini, supra, at 226; Ohio Tel. Equip Sales, Inc. v. Hadler Realty Co. (1985), 24 Ohio App.3d 91, paragraph one of the syllabus. The measure of damages in a conversion action is the value of the converted property at the time it was converted. Tabar v. Charlie's Towing Serv., Inc. (1994),97 Ohio App.3d 423, 427-428. Therefore, if the full value of the converted property has been paid to the owner, the owner has suffered no damages pursuant to a conversion action.
Here, the record reflects that, either voluntarily or pursuant to an order of the court, as of the time of trial AIL paid Fred Silverman all of his monthly renewal commissions. Because the full value of the alleged converted property was returned to Fred Silverman, he suffered no damages pursuant to an action for conversion. However, in his action for breach of contract, Fred Silverman may have been entitled to recover consequential damages he suffered resulting from the withholding of the monies due him. Such consequential damages might include interest owed on money that had to be borrowed because of a lack of expected monthly renewal commission income. See Close v. Young (June 26, 1986), Franklin App. No. 85AP-956, unreported (interest paid on a bank note on money borrowed due to breach of contract may be recovered as consequential damages). Accordingly, the trial court did not err in directing a verdict against Fred Silverman's conversion claim, and plaintiffs' ninth assignment of error is overruled.
In their tenth assignment of error, plaintiffs assert the visiting judge erred in excluding various exhibits plaintiffs proffered for admission. This court reviews the trial court's admission or exclusion of evidence under the abuse of discretion standard. State v. Jells (1990),53 Ohio St.3d 22, 30; Edwards v. Grant Anesthesia Assoc., Inc. (Dec. 29, 2000), Franklin App. No. 99AP-1364, unreported. Only evidence that is relevant is admissible. Evid.R. 401, 402.
First, plaintiffs contend the trial court erred in excluding Exhibits 132 and 143. Exhibit 132 is AIL's 1993 annual report and includes detailed financial information regarding the financial condition of the company. Exhibit 143 is a copy of a paragraph purportedly on AIL's website that contained financial information about the status of the company. Plaintiffs proffered these exhibits as evidence of AIL's net worth with respect to plaintiffs' claim for punitive damages. Because the trial court properly concluded the jury would not consider the punitive damages' issue, the exhibits were not relevant to a matter at issue and were properly excluded from evidence.
Next, plaintiffs contend the trial court erred in excluding Exhibits 100 and 101; they were identified in testimony offered by Morton, who replaced Fred Silverman as state general agent. Exhibit 100 is a letter dated June 30, 1998 from the president of a local labor union in Columbus addressed to the members of the local union. In it, the president of the union local advised the members that AIL in Columbus was under new management, and the union president expressed the belief that the "conduct of [AIL's] agents has become very deceptive, aggressive and unprofessional." The union president advised its members that the local would not be renewing its contracts with AIL after October 20, 1998. Exhibit 101 is Rapoport's response to the letter.
Plaintiffs extensively questioned Morton at trial about the documents and proffered the exhibits to show how Morton had "poisoned" Fred Silverman's territory, allegedly resulting in a drop of income to Silverman. In making their proffer, however, plaintiffs were unable to identify any policies that were not renewed due to the sales practices referred to in Exhibit 100, or any resulting lost income to Fred Silverman. Because plaintiffs were unable to establish Fred Silverman suffered any damages by the alleged sales practices referred to in Exhibits 100 and 101, occurring after Fred Silverman's relationship with AIL as a state general agent had terminated, the trial court did not abuse its discretion in excluding the exhibits as irrelevant.
Plaintiffs next argue the trial court should have admitted Exhibits 109 and 110 into evidence. Those exhibits were state general agent "scorecard" reports created in 1999, after Fred Silverman was no longer a state general agent for AIL and after Rapoport was no longer in control of the company. The "scorecards" were for another unidentified AIL state general agent, not Fred Silverman, and contained the financial information purportedly pertaining to that agent. Plaintiffs used the exhibits as demonstrative evidence to explain to the jury how AIL rated state general agents, and how their performances and real net worth were calculated. Over defendants' objections, the court allowed plaintiffs to extensively use the exhibits in front of the jury for those purposes, but the court did not admit the exhibits into evidence because the financial information contained in the exhibits did not reflect Fred Silverman's figures or performance, which were contained in a different exhibit.
The trial court did not abuse its discretion in refusing to admit Exhibits 109 and 110 where the figures on the exhibits were not those of Fred Silverman and the jury could have been confused or misled by believing the numbers on the exhibit pertained to Fred Silverman rather than another AIL state general agent. Evidence is not admissible if there is a danger that its probative value will be substantially outweighed by confusion or misleading the jury. Evid.R. 403(A). Moreover, plaintiffs have failed to demonstrate substantial prejudice as a result of the trial court's failure to admit the exhibits where plaintiffs were permitted to use and to explain to the jury the material substance of the exhibits.
Plaintiffs lastly claim in their tenth assignment of error that the trial court erred in precluding the admission of plaintiffs' Exhibits 89 and 151. Exhibit 89 is a written version of a sales presentation Morton had his agents use in selling policies, and Exhibit 151 is the tape recorded version of the presentation. Plaintiffs contended at trial that the sales presentation contained misrepresentations of AIL's insurance products, and that Morton pushed Greg Silverman out of his agency in part because Greg Silverman refused to use the sales presentation. Plaintiffs argued the exhibits were admissible because they were probative of Morton's credibility and whether Morton forced Greg Silverman from the agency.
Plaintiffs were permitted to freely present evidence regarding the material substance of the exhibits and the extent Morton used them. Further, at the time plaintiffs proffered the exhibits for admission, Morton had already been dismissed as a party from this case, and plaintiffs' misrepresentation claims had also been dismissed. Notably, any purported misrepresentations contained in the presentations were directed to potential clients of AIL, not to Greg Silverman. Lastly, because the material substance, not the exact content of exhibits, was relevant to Greg Silverman's fraud or breach of contract claim against AIL or Rapoport, plaintiffs have not established they were substantially prejudiced by the trial court's failure to admit the exhibits into evidence. Accordingly, we overrule plaintiffs' tenth assignment of error.
Plaintiffs' next three assignments of error, eleven, twelve and thirteen, involve the transfer of the case to the visiting judge for trial, and we address them jointly. Plaintiffs first assert the transfer of the case to the visiting judge violated Ohio's "single judge" rule embodied in the Supreme Court's Rules of Superintendence for the Courts of Ohio. Sup.R. 36(B) provides that each multi-judge division of the court of common pleas "shall adopt the individual assignment system for the assignment of all cases," meaning that when a case is filed in the court it is assigned by lot to a judge of the division who becomes primarily responsible for the case until it is terminated. However, Sup.R. 36(B)(2) also provides that courts or divisions may adopt local rules to modify the individual assignment system "to provide for the redistribution of cases involving the same * * * parties * * * or subject-matter." Restrictions are generally placed on the transfer of cases "to inhibit real or perceived `judge shopping' and judicial favoritism." Berger v. Berger (1981), 3 Ohio App.3d 125, 128. Thus, a case should be transferred to another judge only for "good cause," with an entry being made on the record as to the need for the transfer. Id. Appropriate reasons for reassignment include absence of the assigned judge or docket congestion for the assigned judge, and a need for action in the case. Id. at 130.
The Franklin County Court of Common Pleas has adopted Loc.R. 31 that expressly provides for the assignment of cases on a "single assignment basis," with each case being assigned to and retained by a specific judge until final disposition or reassignment of the case. See Loc.R. 31.01. The rule states that "[n]othing in this rule shall prevent the transfer of a case or cases from one judge to another with the concurrence of the Administrative Judge and the judges involved." Loc.R. 31.01. However, a guideline of the Franklin County Court of Common Pleas Visiting Judge Program provides that reassignment of a case to a visiting judge should be limited to a situation where the original judge has more than one case scheduled and ready for trial.
Here, the record reflects the original judge would have been unavailable to preside over the case for the two days scheduled for trial. The administrative judge made an "Entry of Transfer" on January 24, 2000, transferring the case to the visiting judge for trial "[b]ecause of the heavy trial schedule on the docket of original [judge]." Neither the record nor plaintiffs suggest that the transfer was done without the concurrence of both the original and the visiting judge, as required by Loc.R. 31.01. The record thus demonstrates that the transfer of this case to the visiting judge was made in accordance with the Rules of Superintendence and the Local Rules of the Franklin County Court of Common Pleas, with the stated reason for the reassignment, coupled with the unavailability of the original judge, constituting "good cause" for the transfer of the case. Berger, supra.
Plaintiffs argue the transfer of the case nevertheless violated several local "rules" promulgated by the Franklin County Court of Common Pleas governing the transfer of cases to a visiting judge. The document setting forth the Franklin County Court of Common Pleas Visiting Judge Program describes its policies not as "rules" but rather as "guidelines," which generally are neither binding nor mandatory. See, e.g., State ex rel. Sugardale Foods, Inc. v. Indus. Comm. (2000), 90 Ohio St.3d 383 (a guideline is not absolutely binding). No evidence suggests the Visiting Judge Program document has been filed with the Ohio Supreme Court. Therefore, the policies regarding the program are not "local rules" because they were not adopted in accordance with Sup.R. 5, providing that a "local rule" of practice must be filed with the clerk of the Supreme Court after adoption by a division of a court. See Kuzas v. Ohio State Med. Bd. (1990), 67 Ohio App.3d 147, 151 ("'rules' are `promulgated' or `adopted' pursuant to the authority of the governing law; guidelines not so promulgated or adopted are not `rules'"). However, even if the "guidelines" are considered to be local rules of the court, it is generally held a court has discretion to deviate from its own rules. Hanes v. Block (1945), 78 Ohio App. 394, 397; Huntington Natl. Bank of N.E. Ohio v. Ashshaheed (Dec. 8, 1989), Ashtabula App. No. 88-A-1405, unreported.
Regarding the Visiting Judge Program guidelines, plaintiffs first contend transfer of their case to the visiting judge was inappropriate because a guideline of the program proscribes the transfer of a "complex" case to a visiting judge. Plaintiffs maintain this was such a case, involving two cases which had been consolidated, numerous parties and claims, the grant of a preliminary injunction, and outstanding motions for summary judgment. However, regardless of plaintiffs' evaluation of this case as a "complicated" case, the record reflects that this case was not classified as "complex litigation" pursuant to Loc.R. 35.01. Therefore, the transfer of the case to a visiting judge was not inappropriate under the program guidelines.
Plaintiffs next contend the transfer of the case to a visiting judge violated a Visiting Judge Program guideline that "the assigned sitting judge must have more than one case scheduled and ready for trial or must be in trial in order to refer a case to a visiting judge." According to the entry of transfer signed by the administrative judge and entered in the record, the original judge had a "heavy" trial schedule. Although plaintiffs assert this case was the only one ready for trial before the original judge, plaintiffs have presented no documentary or other record in support for their assertion and therefore have not rebutted the administrative judge's statement. Under these circumstances, plaintiffs' claim fails.
Plaintiffs finally contend transfer of the case to the visiting judge was in violation of the Visiting Judge Program guideline that "[a]ll motions (including motions in limine) must be ruled on prior to the case being reassigned."
Here, although all matters pending before the original judge were not resolved before the case was assigned to the visiting judge on January 24, 2000, the pending matters were decided by the original judge prior to the time voir dire was completed and trial began before the visiting judge on January 25, 2000. While the trial court arguably erred in allowing two judges to preside over these cases at the same time, plaintiffs have not established prejudice, either as a result of the original judge's delayed decision on the pending motions, or as a result of the visiting judge presiding over the trial. Plaintiffs were afforded the opportunity to question the prospective jurors in voir dire regarding any issues raised by the original judge's rulings the previous day. Further, although plaintiffs contend the visiting judge lacked the "extensive `cumulative familiarity' with the case" which the original judge had acquired, plaintiffs have failed to demonstrate the visiting judge lacked familiarity with the case, as that generally is obtainable by file review; nor have they shown he committed prejudicial error in his handling of the case. Plaintiffs mistakenly compare the original judge's pretrial rulings about certain matters, such as testimony concerning retaliation that would be admissible on the issue of punitive damages, with the visiting judge's rulings made after the evidence was presented at trial, such that insufficient evidence was presented on the issue of punitive damages to allow it to go to the jury for its consideration. The record reflects that the visiting judge complied with Ohio law and followed the original judge's pretrial rulings while basing his ultimate decisions on the evidence presented at trial. Under the circumstances of this case, plaintiffs' eleventh assignment of error is overruled.
In their twelfth assignment of error, plaintiffs assert the visiting judge was appointed as a "permanent," rather than a temporary, visiting judge, in contravention of Section 5(A)(3), (providing for the temporary assignment of judges to a court) and Section 6, (assignment of retired judges) Article IV, Ohio Constitution.
The record does not substantiate plaintiffs' claim that the visiting judge was appointed as a permanent visiting judge. Certificates of assignment reflect that on at least fourteen occasions between October 1997 and March 2001, the Chief Justice of the Ohio Supreme Court appointed that particular visiting judge, a retired judge of a different county's common pleas court, to preside in the Franklin County Court of Common Pleas. However, each of the assignments was for specific cases or for specified, limited time periods, with any proceedings in which he participated to be concluded, if necessary, after the specified period ended. The assignments, although numerous, were for limited time periods and were therefore temporary in nature, not permanent. Plaintiffs' twelfth assignment of error is accordingly overruled.
Because we have determined that the transfer of the case to the visiting judge under the circumstances of this case was not in violation of Ohio law, we overrule plaintiffs' thirteenth assignment of error that asserts the visiting judge was without authority to preside over the case because of the alleged violations of law plaintiffs asserted.
In their fourteenth assignment of error, plaintiffs assert they were denied a fair trial and due process of law by the purportedly numerous procedural irregularities and erroneous rulings plaintiffs previously asserted. However, because no errors resulted in substantial prejudice to plaintiffs, plaintiffs cannot claim that errors in the trial court, either singly or cumulatively, denied them due process or a fair trial. Even where errors exist, if the errors do not prejudice a party's substantial rights, "[s]uch errors cannot become prejudicial by sheer weight of numbers." State v. Hill (1996), 75 Ohio St.3d 195, 212. Plaintiffs' fourteenth assignment of error is overruled.
Having overruled all of plaintiffs' assignments of error, we affirm the judgment of the trial court.
Judgment affirmed.
BOWMAN and DESHLER, JJ., concur.